COMMONWEALTH *vs.* MAX SANDLER.

Middlesex.   May 5, 1975. — October 9, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Receiving Stolen Goods.   Search and Seizure.   Practice, Criminal,*
Mistrial, Ordering verdict.   *Evidence,* Descriptive words, On
cross-examination, General objection to evidence.   *Words,* "Re-
cently stolen."

Evidence that the owner of a barn rented it to a tenant at will, who
denied renting it or storing any goods there to police after being
given the *Miranda* warnings, and that thereupon the owner gave
the police permission to enter the barn justified a conclusion that
their seizure there of stolen merchandise without a search warrant
was lawful.   [732-734]

At the trial of an indictment, after a police witness testified that he
had cast an ethnic slur on the defendant in a dispute six or seven
years earlier, there was no abuse of discretion in the judge's stop-
ping the witness and instructing the jury to disregard the language,
rather than declaring a mistrial.   [734-735]

At the trial of an indictment for receiving stolen merchandise, there
was no error in admitting testimony that hand painted price signs
found in the defendant's store were the same type signs as a sign
found in a barn and subsequently destroyed by mistake.   [735-
736]

At a trial for receiving stolen merchandise, there was no error in the
exclusion of evidence that a prosecution witness who had allegedly
"framed" the defendant in regard to the merchandise had been
indicted for alleged sales of stolen motor vehicles and had in fact
sold stolen motor vehicles.   [736-738]

There was no error at a criminal trial in the denial of a motion to
strike the "entire testimony" of a witness, some of which was
properly admitted and corroborated by another witness.   [738-
739]

At a criminal trial, the judge cannot be required to grant a motion
that the court direct a verdict of not guilty on the Commonwealth's
opening.   [739-740]

A finding in a criminal case that the defendant knew that merchan-
dise found by police in a barn had been stolen was warranted,
without direct evidence and notwithstanding the defendant's denial
of ever having had possession of the merchandise, where there was
direct evidence that the barn had been rented to the defendant

and that his employee went there on a number of occasions. [740-742]

With respect to three indictments for receiving merchandise stolen about two to eight months before the dates on which the defendant was charged with receiving the merchandise, there was in the circumstances no error in the trial judge's instructing the jury that it was "a question of fact" whether the merchandise was "recently stolen," so that possession thereof with knowledge it was stolen would put the burden of explanation on the defendant. [742-744]

INDICTMENTS found and returned in the Superior Court on March 15, 1971.

Pre-trial motions to suppress evidence were heard by *Lynch*, J., and the cases were tried before him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Murray P. Reiser (David M. Shaw* with him) for the defendant.

*Terence M. Troyer*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J.   The defendant was found guilty by a jury at a single trial on six indictments, each of which charged the crime commonly referred to as receiving stolen property.   G. L. c. 266, § 60.   On each of five of the indictments he was sentenced to a house of correction for the term of one year, all sentences to run concurrently and all being suspended for one year; and on the sixth indictment he was fined $250.   This is the defendant's consolidated appeal therefrom under G. L. c. 278, §§ 33A-33G.   The appeal was originally entered in the Appeals Court and was thereafter removed by us to this court for direct appellate review.   G. L. c. 211A, § 10 (A), inserted by St. 1972, c. 740, § 1.

The principal alleged errors argued by the defendant on this appeal are the following actions by the judge before or during the trial:  (1) the denial of his motions to suppress as evidence the stolen goods which were seized by the police without a search warrant, (2) the denial of his motion for a mistrial which he requested because of

an alleged ethnic slur against him by a prosecution witness, (3) the rulings on several evidentiary questions which arose during the trial, (4) the denial of motions for directed verdicts made at the close of the Commonwealth's opening, at the close of the Commonwealth's evidence, and again at the close of all the evidence, and (5) the refusal to instruct the jury that as to the goods involved in indictments nos. 92,675; 92,676 and 92,677 they could not find that the goods were "recently stolen," and the giving of an instruction that it was a question of fact for the jury to determine whether those goods were "recently stolen."

For the reasons stated below, we hold that there was no error and that the judgments on all indictments should be affirmed.

We summarize certain facts which are not in dispute. On February 4, 1971, several State and town police officers, with the permission of the owner, one Raymond Drew, entered a barn located at the rear of 16 Washington Street in Reading, and seized and removed therefrom a large quantity of merchandise. The parties stipulated that all of this property had been stolen, and that it was the same property which the defendant is charged, in the six indictments involved in this case, with having received knowing it to have been stolen.[1] The police acted without a search warrant. The defendant filed a motion as to each indictment to suppress all of the merchandise as

[1] The merchandise stolen, its value, and date of its theft are as follows:

| Indict. No. | Description of Merchandise | Value | Date Stolen |
| --- | --- | --- | --- |
| 92672 | Welding rods | $1,399.20 | 1-16-70 |
| 92673 | 2 Electric Typewriters | 800.00 | 5- 5-69 |
| 92674 | Clocks | over $100 | 1-16-70 |
| 92675 | Men's work gloves | 1,677.00 | 7- -70 |
| 92676 | Buttoneers | over $100 | 8- -70 |
| 92677 | Miscellaneous merchandise of Top Value Enterprises, Inc. | over $100 | 12-4-70 |

evidence, alleging that the warrantless search of the premises and seizure of the merchandise were unlawful. Before empanelling the jury the judge heard evidence and arguments on the motions to suppress, after which he made express oral findings and rulings thereon which appear in the transcript of the hearing, and denied the motions. The judge's findings and rulings will be summarized in the discussion relating to the denial of the motions.

Additional appropriate statements of facts or of evidence will be made in the discussion of the other alleged errors assigned by the defendant.

1. *Motion to suppress evidence.* We summarize the facts found by the judge in relation to his denial of the defendant's motions to suppress the merchandise allegedly unlawfully seized by the police officers. At all times material to the motions, Raymond Drew rented to the defendant as a tenant at will a portion of a two-story barn located in Reading. The barn thus rented was connected to another building owned by Drew. In the wall between the barn and other building there was an opening from which a person or persons unknown had removed a door, thus permitting passage between the two buildings.

On or about February 3, 1971, certain police officers who were investigating the reported theft of personal property asked Drew about the ownership or rental of the barn and Drew told them that it had been rented to the defendant. On the basis of that information, the police officers went to see the defendant the next day, February 4, 1971, at his place of business in Reading. They gave him the so called *Miranda* warnings (see *Miranda* v. *Arizona,* 384 U. S. 436 [1966]), specifically directed his attention to the subject of the barn and to certain goods then in the barn, and asked him whether he had rented the barn. He denied renting the barn or storing any property there, and he said that the only places which he rented or used for storage were the store

where the questioning was going on and a couple of trailers in the back of that building. The judge concluded "that the defendant specifically disclaimed in affirmative fashion any knowledge of renting the locus [the barn] or of owning any of the merchandise at that locus," and "that at least one of the police officers, the primary questioner of the defendant at that time, did not believe the defendant's denial of any renting relationship as to the locus."

The police officers then returned to the landlord, Drew, and told him of the defendant's disclaimer of any rental relationship in so far as the barn was concerned. Thereupon Drew consented to the entry by the police officers into the barn. The officers first entered the part of the building not rented to the defendant and which was occupied by Drew, and from that point they looked through the opening described above and into the barn rented to the defendant, thus seeing the materials stored in the barn to the extent that the opening afforded a view of the interior of the barn. They then obtained permission from Drew to enter the barn rented by the defendant. The officers gained entry to the barn by breaking a lock on an outer door. In the barn the officers found the various articles described in the six indictments against the defendant and in the Commonwealth's particulars thereto. They are the same articles referred to in the defendant's motions to suppress.

The judge then stated several general conclusions and rulings which we summarize: (1) the defendant had standing to question the validity of the seizure of the merchandise in the barn, citing *Commonwealth* v. *Dirring,* 354 Mass. 523 (1968), and *Jones* v. *United States,* 362 U. S. 257 (1960); (2) the defendant was warned by the police officers that he was not required to make any statement, but he chose to make a statement in which he totally disavowed and disclaimed any interest in the barn or in the goods stored therein; (3) having done

that, the defendant cannot now be heard to complain that his constitutional rights were violated by reason of the fact that the officers did not first procure a search warrant; and (4) in these circumstances it was sufficient that the officers obtained the permission of the owner, Drew. The judge cited *Commonwealth* v. *Mayer*, 349 Mass. 253 (1965), *Abel* v. *United States*, 362 U. S. 217, 241 (1960), and *Friedman* v. *United States*, 347 F. 2d 697, 704 (8th Cir. 1965).

The evidence supported the judge's subsidiary findings, and the subsidiary findings in turn supported his general conclusions. His rulings of law were correct, and there is nothing which we need add to what he placed in the record in denying the motions to suppress. There was no error in that respect.

2. *Motion for mistrial.* One of the prosecution witnesses was a Reading police officer. In cross-examination he testified that several years earlier he had had a dispute with the defendant as a result of which he was quite angry with him, but that he was not angry with him at the time he was testifying. On redirect examination the prosecutor brought out that the dispute had occurred six to seven years earlier and he asked the witness what the dispute was about. The witness said that he had purchased some fertilizer from the defendant, that the defendant had loaned him a spreader, that he delayed several days in returning the spreader, and that when he entered the store to return it the defendant referred to him as a "bastard" and he said to the defendant, "You Jew s -- of a b----." The judge then stopped him, the defendant moved for a mistrial and the judge denied the motion. The judge instructed the witness to refrain from using such language and instructed the jury to disregard the language.

The defendant calls the language of the witness "an ethnic slur" and "religious epithets" giving rise to prejudice which required the granting of a mistrial. We

do not agree. The decision whether to handle the situation by declaring a mistrial or by instructing the jury to disregard the statements of the witness was discretionary with the judge. He did not abuse his discretion.

3. *Evidentiary rulings.* The defendant has assigned as alleged errors a number of evidentiary rulings by the judge. We hold that there was no error in any of the rulings. The evidentiary questions are not novel, and most of the questioned rulings involved the element of judicial discretion with no showing of any abuse of that discretion. We therefore describe the alleged errors only to the extent necessary to identify them in disposing of the claims of error.

(a) The judge allowed a police officer to testify that certain hand painted price signs in the defendant's store were the same type signs as one found attached to an empty carton in the barn. The police had taken and saved the carton and the sign attached, but before trial they had been destroyed by mistake after a water leak in the police office where they were being kept. The witness described the signs at the store and the one found in the barn by size, color, and similarity of lettering or numbering. The defendant's argument on this point is not clear. It appears to be in part that, because the original signs were not produced for introduction in evidence, no evidence about their similarity was admissible, and in part that the officer did not possess the requisite qualifications to express the opinion on the similarity of the signs. The argument, however understood, is without merit. *Noyes* v. *Noyes,* 224 Mass. 125, 129-130 (1916). *Commonwealth* v. *Cataldo,* 326 Mass. 373, 376 (1950). See *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 133-136 (1875). In *Commonwealth* v. *Tracy,* 349 Mass. 87, 95 (1965), we said: "It has long been held that summary descriptions of things, if based on the sensory reactions of men in general and not requiring special learning or experiment, may be admissible as statements

of observed facts." *Commonwealth* v. *Robertson,* 357 Mass. 559, 563 (1970).[2]

(b) The landlord, Drew, was one of the prosecution's witnesses, and he testified that the defendant had rented from him the barn in which the police found the stolen merchandise described in the indictments against the defendant. The defendant attempted to impeach Drew's credibility in a lengthy and far-reaching cross-examination, and the judge gave him wide latitude in that attempt. The defendant in fact contended that he had never rented the barn in question, and that Drew had "framed" him in regard to that merchandise to cover his own participation in the sale of some stolen motor vehicles.[3] Before he testified against the defendant, Drew had been indicted on charges growing out of the alleged sale of stolen motor vehicles, but he had not been tried on those indictments. The defendant pressed hard and long for the right (1) to present evidence that Drew had been so indicted and (2) to present evidence, in part through the cross-examination of Drew and in part through other witnesses, to prove that Drew had in fact sold stolen motor vehicles. It was the defendant's argument that "if a man is in the business of running a

---

[2] The defendant's brief purports to argue two assignments of alleged error (nos. 3 and 5) together. The brief contains no references to the transcript pages where the allegedly erroneous rulings were made, and thus fails to comply with S.J.C. Rule 1:15 (2), 351 Mass. 739 (1967). As to assignment no. 3 we found a transcript reference in the assignment of error; but as to assignment no. 5 the transcript reference given in the assignment of error is apparently incorrect and we do not assume the burden of searching the transcript for the essential information.

[3] The defendant's counsel made the following statement: "My entire defense is that my client was framed by Mr. Drew. That Mr. Drew was operating a stolen car ring during this period of time. That when the police came down, Mr. Drew at that time was a leading member of the community. He was caught in the position of having to name somebody as renting the place or he would be arrested. He then said he rented it to my client, and the police then proceeded with their investigation which led to my client's indictment. I further state that at this time he was operating a stolen car ring."

fencing operation, he is not going to be selling just one particular form of goods." He argued that if he could prove that Drew sold stolen automobiles that would be evidence that he and not the defendant had received the stolen merchandise which was in the barn. The judge correctly excluded all of that evidence.

However, in almost all other respects, the judge allowed the defendant's counsel great latitude in the cross-examination of Drew as indicated by the following statement: "I will permit you to inquire of this witness as to any inducements, promises, threats, whatever it may be that might affect his credibility or testimony or might induce him to give incriminating evidence against your defendant. You may do that. That is as far as we are going to go." The judge also directed counsel's attention to the decision in *Commonwealth* v. *Murphy,* 282 Mass. 593, 599 (1933), dealing with the right of a defendant in a criminal case to present evidence tending to prove that the crime for which he stands charged was committed by another person. The judge then said: "I will permit you to come within the *Murphy* case to the extent that you can produce probative evidence that will directly connect . . . Drew with these goods of which your client is charged. If you cannot do that, it seems to me you do not fall within the *Murphy* case." Again, shortly thereafter the judge said: "Now, as far as this witness [Drew] is concerned, certainly I am going to permit you to cross examine him as to any reason why he might give the testimony incriminating the defendant. You have that right," and later he also said: "but we are not going to get into the details of any three cars."

The action by the judge fully recognized the defendant's reasonable right to cross-examine Drew for the purpose of attempting to impeach him or discredit his testimony. *Commonwealth* v. *Underwood,* 358 Mass. 506, 513 (1970). It also reflected the correlative rule that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may

be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry." *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593 (1956).

(c) A police officer of the town of Reading testified in substance as follows: (1) that between June, 1970, and February, 1971, his hours of duty were between 4 P.M. and midnight, and that "on numerous occasions" in that period he saw the defendant's truck, operated by one Earl Beighley, the defendant's employee, at the barn in which the police later found and removed the stolen merchandise, and (2) that in October, 1970, he bought a "mini-Eight" tape deck at the defendant's store from the defendant personally and that the tape deck "came in a cardboard box and on at least four different spots on the box [there was] a cutting where markings had been cut out with a razorblade . . . like the shipment where it came from or who it was going to. This box I think I took to the station."

At this point the defendant moved that "this entire testimony be stricken," stating no reason therefor. The motion was denied and the defendant excepted. The defendant argues before this court only that the admission of the testimony about the box in which the tape recorder was contained was improperly admitted. The motion was to strike "this entire testimony" and it was made after the officer had testified not only about the tape recorder and box, but also about the defendant's truck and employee going to the barn on numerous occasions. Since there is no question that the testimony on the latter subject was properly admitted, the judge properly denied the defendant's motion to strike the officer's testimony in its entirety. "The motion to strike was too broad, for it included competent as well as [allegedly] incompetent evidence." *Bryer* v. *P. S. Thorsen Co. of Mass.* 327

Mass. 684, 687 (1951). *Afienko* v. *Harvard Club of Boston*, 365 Mass. 320, 334-335 (1974).

However, even if the motion to strike had been limited to the testimony about the tape deck and the box in which it came, the result would be the same.  There was evidence by another witness that about ninety-five or ninety-six per cent of the boxes found in the barn on February 4, 1971, had the same appearance as the box containing the tape deck purchased by the officer from the defendant in October, 1970.  The testimony about the appearance of the boxes in the barn was that "it would appear . . . that someone took a knife or a razor blade and just cut a fraction of the outside of the box, just enough to do away with the writing or whatever was written on the box.  The box was not completely cut through.  Just the outside surface of the box was cut."

(d)  As noted above, there was evidence that the defendant's employee, Beighley, had been at the barn on numerous occasions between June, 1970, and February, 1971.  The judge permitted the prosecutor, in cross-examination of Beighley, to show that Beighley had made an appointment to meet with a police officer to discuss these cases on the previous evening, and that when the officer met with him he refused to talk to him.  The judge instructed the jury that Beighley was under no obligation to talk to any lawyers or to anybody.  It also appeared in evidence that the witness had been so advised by defendant's counsel.

We find no merit in the defendant's attempt, in one page of his brief, to convert this development into legal error or resulting prejudice.

4. *Motions for directed verdicts.*  The defendant contends that the judge erred in denying his motions for directed verdicts made at the end of the Commonwealth's opening, at the close of the Commonwealth's case, and again after both sides had rested.

(a)  In a very recent case, *Commonwealth* v. *Baker*, *ante*, 58, 80-81 (1975), we said:  "As to a motion [for

a directed verdict] made after the Commonwealth's opening, the law . . . is that 'a judge cannot be required to direct a verdict on an opening.' *Commonwealth* v. *Hartford,* 346 Mass. 482, 489 (1963). *Commonwealth* v. *Binnette,* 351 Mass. 704 (1966). *Commonwealth* v. *van Kooiman,* 353 Mass. 759 (1967). *Commonwealth* v. *Sloane,* 361 Mass. 872 (1972). *Commonwealth* v. *Michel,* 367 Mass. 454, 463 (1975). We therefore do not deal with the alleged error in the denial of the motions for directed verdicts after the Commonwealth's opening." That language controls in these cases.

(b) The sole question raised by the motions for directed verdicts which were filed at the close of the Commonwealth's evidence and again at the close of all the evidence is whether, when the motions were filed, "there was sufficient evidence of the defendant's guilt to warrant the submission of the cases to a jury." *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 271 (1944). *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). For the purpose of answering this basic question we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient, as to each indictment, to permit the jury to infer the existence of the essential elements of the crime charged in that indictment.

Because the parties stipulated that the merchandise in question was in fact stolen, and because of the direct evidence that the defendant had rented the barn in which the merchandise was found and that his employee went there on a number of occasions, the defendant's argument for directed verdicts concentrated almost entirely on the claimed lack of evidence that he knew that the merchandise had been stolen. As to this element of the crime, the defendant may be convicted " 'if he either knew or believed this property was stolen property at the time it came into his possession, or at any time while it was in his possession he ascertained that it was

stolen property and he undertook to deprive the owner of his rightful use of it.'" *Commonwealth* v. *Kronick,* 196 Mass. 286, 288 (1907). *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371 (1925). *Commonwealth* v. *Boris,* 317 Mass. 309, 313 (1944). *Commonwealth* v. *Matheson,* 328 Mass. 371, 373 (1952). *Commissioner of Pub. Safety* v. *Treadway, ante,* 155, 160-161 (1975).

The absence of direct evidence that the defendant knew that the merchandise found in the barn rented by him from Drew had been stolen did not require the judge to order the jury to return verdicts of not guilty. "A man's intention or knowledge is a matter of fact which ordinarily cannot be proved by direct evidence and resort frequently must be had to proof by inference." *Commonwealth* v. *Boris, supra,* at 315. Without reciting further details of the evidence, much of which has already been described above in this opinion, we hold that the evidence was sufficient to permit a jury to find that as to each indictment the defendant, on or about the date stated therein, "did buy, receive or aid in the concealment of . . . [the merchandise described therein, which merchandise was] then lately before stolen, the . . . [defendant] well knowing the said property to have been stolen."

We have reached the conclusion above as to the sufficiency of the evidence without resort to, or reliance on, the rule that "[p]ossession of recently stolen property puts the burden of explanation upon one . . . charged with having received property, knowing it to have been stolen." *Commonwealth* v. *Kelley,* 333 Mass. 191, 193-194 (1955). This rule has sometimes been said to create a permissible presumption, and at other times to create a permissible inference, of knowledge that the property had been stolen. For a discussion of the history of the rule and a holding that the rule is constitutional, see *Barnes* v. *United States,* 412 U. S. 837, 841-847 (1973). For a discussion of the *Barnes* decision and of the general subject of presumptions, inferences, and prima facie

evidence in criminal trials, see *Commonwealth* v. *Pauley,* *ante,* 286, 290-299 (1975). See· also the following cases involving the charge of larceny. *Commonwealth* v. *Torrealba,* 316 Mass. 24, 29 (1944). *Commonwealth* v. *Brant,* 346 Mass. 202, 205 (1963). *Commonwealth* v. *Wilbur,* 353 Mass. 376, 384-385 (1967). *Commonwealth* v. *Ryan,* 355 Mass. 768, 773 (1969). Although the defendant testified at his trial, he made no explanation of how he came into possession of the stolen merchandise. Instead he denied that he ever had possession of it.

The defendant contends that the rule quoted above does not apply in these cases because, in any event, the merchandise, although admittedly stolen, was not "recently" stolen when he is charged with having bought or received it or with having aided in its concealment. We deal with this contention under the next part of this opinion.

5. *Instructions to the jury.* The rule quoted above from the *Kelley* case to the effect that "possession of recently stolen property puts the burden of explanation upon one . . . charged with having received property, knowing it to have been stolen," was handled in the following manner by the judge in the course of his instructions to the jury. He stated the rule to the jury in general terms, stressing the fact that the rule applied only to the possession of "recently stolen property." He then divided the six indictments into two groups of three. He pointed out that the three lowest numbered indictments (92672, 92673, and 92674) involved merchandise which by agreement had been stolen on dates which were between thirteen and twenty-one months before the dates on which the defendant was charged with having received it. He instructed the jury that "as a matter of law that property cannot be considered as recently stolen," and that as to that property the jury "may not consider that there is any presumption that the defendant knew that the property was stolen." He then pointed

out that the other three indictments (92675, 92676, and 92677) involved merchandise which by agreement had been stolen on dates which were between about two to eight months before the dates on which the defendant was charged with having received it. As to these three indictments he instructed the jury that "it is a question of fact for you to determine whether that was recently stolen property."

The defendant, understandably, does not claim error in the judge's treatment of the first three indictments, and the Commonwealth cannot claim error. We therefore need not pass on the judge's ruling in regard thereto. By this abstention we do not intend any intimation that the ruling was not correct in this particular case. However, we suggest that this opinion not be considered as authority for the proposition that all stolen property loses its "recently stolen" status thirteen months after its theft, or that it cannot lose that status before the expiration of thirteen months.

The defendant, however, does claim that the judge's different treatment of the second group of three indictments was error. He contends that as to those the judge should have made the same ruling as he did with the first three — that as matter of law the property was not "recently stolen." We do not agree. We do not, however, negate the possibility that as to the property stolen two months earlier the judge might properly have ruled that it had been "recently stolen" as matter of law. Here again we suggest that this opinion not be considered as authority for the proposition that all stolen property continues to be "recently stolen" for two months after its theft.

The defendant erroneously argues in his brief that "[t]he court also ruled as a matter of law that indictment numbers 92675, 92676 and 92677 must be treated as recently stolen property and that the presumption of knowledge and the burden of explanation shifted to the defendant, Max Sandler. It was error for the trial court to so rule." The trial court did not so rule. It is error

for the defendant so to claim. On those three indictments the judge submitted the question of fact to the jury to decide whether the property was "recently stolen."

There are few judicial precedents in this Commonwealth to help a judge or jury in deciding whether stolen property was "recently stolen." In *Commonwealth* v. *Kelley,* 333 Mass. 191, 194 (1955), we said: "The defendant makes the contention that the lapse of fifty-four days between the robbery and the date of the defendant's proved possession is enough to take the case out of the rule. We cannot accept an argument, which is, in substance, that this period of time is, as matter of law, too long to permit the jury to draw an inference of guilty knowledge on the part of the defendant."

It is not appropriate to resort to judicial fiat to establish a uniform period of time on the expiration of which stolen property ceases to be "recently stolen." That decision must be made on the basis of the facts and circumstances of each case, and it is a question of fact for the fact-finding tribunal, except in those cases where the theft was so recent or so remote as to permit the judge to rule on the question as matter of law. Some guidance in this regard is obtainable by resort to Federal decisions involving periods of from four months to fifteen months after the theft. *Boehm* v. *United States,* 271 Fed. 454 (2d Cir. 1921). *Lee* v. *United States,* 363 F. 2d 469, 475 (8th Cir. 1966), cert. den. 385 U. S. 947 (1966). *United States* v. *Riso,* 405 F. 2d 134, 137-138 (7th Cir. 1968), cert. den. 394 U. S. 959 (1969). *Altom* v. *United States,* 454 F. 2d 289, 294 (7th Cir. 1971), cert. den. 406 U. S. 917 (1972). See also 50 Am. Jur. 2d, Larceny, § 162 (1970).

6. *Conclusion.* In conclusion we hold that there was no error in any of the rulings of the judge which the defendant alleged to be erroneous and argued in his brief. The judgment is therefore affirmed as to each of the six indictments involved in these cases.

*So ordered.*