COMMONWEALTH vs. RAYMOND I. BUSHWAY.

Essex.    April 10, 1979. — June 5, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Infernal Machine. Words,* "Device."

At the trial of an indictment charging the defendant with possession
of an infernal machine under G. L. c. 266, § 102A, there was suffi-
cient evidence to warrant a finding that certain lightweight plastic
garbage bags into which the defendant had poured gasoline were
"device[s] for endangering life or doing unusual damage to proper-
ty, or both, by fire or explosion, whether or not contrived to ignite
or explode automatically and whether or not disguised so as to
appear harmless." [716-719]

INDICTMENT found and returned in the Superior Court
on January 5, 1977.

The case was tried before *McNaught, J.*

*Geoffrey C. Packard* for the defendant.

*Diane M. Kottmyer,* Assistant District Attorney, for the
Commonwealth.

HALE, C.J. The defendant appeals from his conviction
on an indictment found under G. L. c. 266, § 102A (as
amended by St. 1970, c. 422), charging him with posses-
sion of an infernal machine.[1] The sole issue raised[2] is

[1] General Laws c. 266, § 102A (as amended by St. 1970, c. 422),
provides in pertinent part: "Whoever . . . has in his possession or under
his control an infernal machine or a similar instrument, contrivance
or device shall be punished . . . . The term 'infernal machine,' as used
in this section, shall include any device for endangering life or doing
unusual damage to property, or both, by fire or explosion, whether or
not contrived to ignite or explode automatically and whether or not
disguised so as to appear harmless."

[2] Although there were other errors assigned, they have not been
argued and are deemed to have been waived.

whether there was sufficient evidence from which the jury could infer (*Commonwealth* v. *Sandler*, 368 Mass. 729, 740 [1975]; *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 612-613 [1976]) that certain lightweight plastic garbage bags containing gasoline were "device[s] for endangering life or doing unusual damage to property, or both, by fire or explosion, whether or not contrived to ignite or explode automatically and whether or not disguised so as to appear harmless." See note 1, *supra*. We conclude that there was no error in the judge's denial of the defendant's motion for a directed verdict made at the close of the Commonwealth's case.

The Commonwealth presented evidence that on the night of September 3, 1976, two officers of the Lawrence police department came upon the following scene. The defendant, crouched behind the open door of a parked station wagon, was pouring a liquid from a red plastic jug into a green plastic trash bag. Both officers detected a strong odor of gasoline. When one of the officers asked the defendant what he was doing, he replied, "You figure it out," and began to walk towards a sandwich shop across the street, apparently to get his brother who, he said, could vouch for him. One of the officers went around to the back of the station wagon where he noticed in the rear compartment two other bags containing a liquid. These bags were tied with a knot at the top and had the shape of "balloon[s]." Gasoline was seeping out of them. A fourth bag containing liquid was found on the ground behind the station wagon.

After his arrest and after having been given the Miranda warnings, the defendant told the officers that he was "just going to have some fun" and that "he was going to Middleton and have a party." He stated that no one was going to get hurt and talked of putting the gasoline in a ditch and lighting it. A search of the defendant uncovered $511 in his possession. He had not been employed for approximately three months. When asked about the money, he told the police that he "like[d] to carry large sums

of money" and that he "would have made more but you got me."

There was also testimony that a plastic bag containing gasoline will expand as vaporization occurs. Some vaporization of the gasoline in the bags was found to have already occurred. Gasoline will explode if there is sufficient vaporization, air and a source of heat or ignition.[3] The red plastic jug used by the defendant to pour gasoline into the bags was of a type approved for the transportation of gasoline.

In *Commonwealth* v. *Kennedy*, 360 Mass. 859 (1971), the only case interpreting G. L. c. 266, § 102A, the court was concerned with a contrivance quite different from the plastic trash bags in this case. In that case the Supreme Judicial Court held that the judge had properly instructed the jury that they should conclude that an explosive pyrotechnical bomb shell, know to the defendant to be a bomb, was an infernal machine if they should believe the testimony that the device was capable of causing extensive property damage and personal injury. The record in that case reveals that the device, a display firework commonly used at Fourth of July celebrations, contained explosive powder which would be ignited by a thirteen and a half inch fuse. There was expert testimony that such a device would be classified as a bomb under the regulations of the Department of Public Safety.

Despite the dissimilarities between the contrivances involved, we have no trouble concluding that the evidence in this case was sufficient for the jury to find that a lightweight plastic bag tied with a knot and partially filled with gasoline was a "device" under G. L. c. 266, § 102A, since it was a piece of equipment put together to serve a particular purpose. The defendant's contention

---

[3] A lieutenant on the arson squad of the Lawrence fire department testified about a demonstration he had witnessed at which one and a half gallons of gasoline were set off with a blasting cap causing an explosion and a fire approximately fifty feet in height, the heat from which was felt a distance of two hundred fifty feet.

that the bags were innocent, albeit unusual, containers of gasoline flies in the face of evidence that he had, in the shape of the red plastic jug, an approved container designed for carrying gasoline, obviously safer than the bags, from which was seeping the liquid which had been transferred from the jug. The defendant maintains that in order to constitute "devices," the bags must be shown to have been assembled according to an inventive scheme for the purpose of performing a physical task. The judge recognized the validity of that contention and instructed the jury to that effect when he told them, "[I]t must be something which is made. It cannot be simply one element. It must consist of more than one part in order to be a device, instrument or machine or contrivance as the statute says." We are not compelled, even under the rule of strict construction of penal statutes, to adopt a definition of the word "device" which confines its application to intricate contrivances. See *Commonwealth* v. *McMenimon*, 295 Mass. 467, 470 (1936); *Milton* v. *Massachusetts Bay Transp. Authy.*, 356 Mass. 467, 474 (1969).

Therefore, a finding by the jury that the plastic trash bags containing gasoline were devices within the meaning of the statute was warranted. However, such a device does not necessarily constitute an infernal machine unless it is to be used for an unlawful purpose and by an unlawful means as provided in G. L. c. 266, § 102A. Although it is conceivable that under another set of circumstances such a device could be used for a benign purpose,[4] under the evidence in this case it would be a credulous jury that would believe that the bags were to be used for

---

[4] The judge provided an example in his charge to the jury: "Suppose that I were out on a highway and my car ran out of gasoline. I could find no container to bring gasoline back to my automobile except a small plastic bag. That plastic bag would not have been used by me or constructed by me, putting the gasoline in it, for any purpose of endangering human life. It was not made for the purpose of doing unusual damage to property by way of fire or explosion, and therefore the object in and of itself is not necessarily an infernal machine."

such a purpose. The evidence permitted the jury to find not only that bags containing gasoline were volatile and dangerous, but also that the defendant was aware of those qualities. An inference that the bags were to be used for an illicit purpose was both possible and reasonable. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977), and cases cited. The defendant's possession of a large sum of money, considering his unemployment, could be construed as an indication of criminal activity (see *Commonwealth* v. *Miller*, 4 Mass. App. Ct. 379, 384 (1976); *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. at 609), and his statement that "he would have made more but you got me" furnished strong support for such a conclusion. That there was no evidence that at the time of his arrest the defendant had on his person any means of igniting the devices is not, as the defendant argues, conclusive. The defendant told the police he planned to light the gasoline.

Accordingly, there was no error in the judge's denial of the defendant's motion for a directed verdict, and the judgment is affirmed.

*So ordered.*