NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-673

COMMONWEALTH

vs.

APRIL MARIE RESTREPO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in District Court, the defendant was convicted of one count of assault and battery on a household or family member under G. L. c. 265, § 13M, and one count of assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A.  On appeal, the defendant argues that the judge erred in denying her motions for required findings of not guilty because the Commonwealth failed to prove that she did not act in self-defense.  We agree that the Commonwealth failed to meet its burden of proof and, accordingly, reverse the defendant's convictions.[1]

---

[1] The defendant also argues that the judge erred in admitting body-worn camera footage in evidence because it was more prejudicial than probative.  Because we reverse the

Background. On the evening June 23, 2021, police were called to the house of the father of the defendant's children in Boston. Two officers responded, and one officer's body-worn camera recorded the following interaction with the defendant. The defendant told the officers that she had an altercation with her girlfriend an hour earlier at the defendant's house several blocks away. She reported injuries to her head and ankle. After the officers called an ambulance, they asked the defendant about the altercation. The defendant told them that she and her girlfriend got into an argument, the defendant told the girlfriend to leave the home, and the girlfriend refused. The defendant then stated, "I got physical with her, and she got physical back, and we've been going through this for days, that's why I have old bruises, new bruises on me, cause this has been like three days of this. . . . She's like emotionally abusing me, and we're physically abusing each other." At this point, an officer asked, "You said, you got physical with her, and she got physical back?" and the defendant responded affirmatively. After an officer asked, "Who had the weapon?" the defendant answered "me" and stated that it was a knife. The officers then arrested the defendant.

_____

defendant's convictions for insufficient evidence, we do not address that argument here.

Before trial, defense counsel informed the judge and the prosecutor that his client was going to testify and their theory was self-defense. The Commonwealth's case-in-chief at trial consisted of testimony from the two officers who responded to the children's father's house, a redacted version of the body-worn camera footage, and medical records of the girlfriend's treatment after the altercation. The records from Boston emergency medical services showed that the girlfriend had an injury to her hand, also described as a small abrasion on her forearm. Similarly, the emergency department records from Boston Medical Center described the girlfriend's injury as a small superficial laceration on her right thumb that was not bleeding. After the Commonwealth rested, the defendant moved for required findings of not guilty on the ground that, even though the defendant had provided notice that self-defense was at issue, the Commonwealth had not met its burden to prove that the defendant did not act in self-defense. The judge denied the motion, finding that "the Commonwealth has met its burden, at least at this stage."

The defendant testified on her own behalf. She stated that she and her girlfriend had a verbal confrontation in the defendant's home. Her girlfriend hit her first and then punched her approximately eight times until the defendant fell to the

3

floor.  The girlfriend was six to nine inches taller than the defendant.  While her girlfriend was hitting her, the defendant retrieved a pocketknife from the nightstand because she was concerned for her safety.  As she was being punched, the defendant accidentally cut or grazed the girlfriend's thumb with the knife.  There was no blood.

The defendant further testified that the altercation started in the bedroom, but after she was pushed to the ground, she got up and went into the hallway and then the living room. The girlfriend followed her into the living room, the defendant told her to pack up her stuff and leave, and another fist fight broke out.  The defendant left the house and walked without her phone, keys, or shoes to the house of her children's father, six to eight blocks away.  Once the defendant arrived, the father called the police, and eventually handed the defendant the phone.  During the prosecutor's cross-examination of the defendant, the Commonwealth introduced a recording of the 911 call, which included the defendant's statements to the dispatcher.

After the close of all evidence, the defendant renewed her motion for required findings of not guilty on the ground that the Commonwealth had not met its burden of disproving self-defense.  The judge denied the motion.  In his closing argument,

the prosecutor argued that "you lose the right to self-defense if you started the fight," and, citing the defendant's statements from the body-worn camera footage, argued: "So, who started it? The defendant started it. The defendant struck first, and the defendant escalated it when the fight did not go her way." The prosecutor urged the jury to disregard the defendant's trial testimony because the body-worn camera footage showed her "admitting to starting the fight, and . . . admitting to escalating it from a fist fight to a knife fight." The judge instructed the jury on self-defense, and the jury returned a verdict of guilty of both counts. The defendant again moved for required findings of not guilty on the ground that the Commonwealth did not disprove self-defense beyond a reasonable doubt, and the judge denied the motion.

Discussion. The defendant argues that the trial judge erred in denying her motions for required findings of not guilty because the Commonwealth failed to meet its burden of proving beyond a reasonable doubt that she did not act in self-defense. We agree.

We first "consider the state of the evidence at the close of the Commonwealth's case to determine . . . whether the Commonwealth [had] presented sufficient evidence of the defendant's guilt to submit the case to the jury" (citations

5

omitted).  Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018), cert. denied, 139 S. Ct. 2010 (2019).  We evaluate the sufficiency of the Commonwealth's evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  "Once self-defense is put in issue, the Commonwealth must prove that the defendant did not act in self-defense."  Commonwealth v. Kamishlian, 21 Mass. App. Ct. 931, 932 (1985).  Specifically, "the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense, by establishing that at least one of the three factors did not exist (i.e., that the defendant did not have reasonable concern for [her] safety, that [she] did not use all reasonable means to avoid physical combat, or that the force that was used was greater than necessary in all circumstances of the case)." Commonwealth v. King, 460 Mass. 80, 83 (2011), citing Commonwealth v. Glacken, 451 Mass. 163, 167 (2008).

In its case-in-chief, the Commonwealth introduced in evidence the recorded statements that the defendant made in response to the officers' questions after she arrived at the

6

house of her children's father.  Asked by the officers about what happened, the defendant described a conflict that had lasted "for days" between her and her girlfriend, during which they were "physically abusing each other" and the defendant ended up with "old bruises" and "new bruises on me."  At one point, the defendant stated about the altercation:  "I got physical with her, and she got physical back, and we've been going through this for days."  She then answered in the affirmative to an officer's question, "You said, you got physical with her, and she got physical back?"  The defendant also acknowledged that she had a knife.

The Commonwealth argues that these statements prove that the defendant did not act in self-defense because she "admitted that she initiated the physical aggression."  See Commonwealth v. Castillo, 485 Mass. 852, 856-857 (2020) ("A person who initiates a fight cannot generally claim self-defense").  In his closing argument, the prosecutor cited these statements as proof that the defendant "started" the fight and "struck first," and "escalated it when the fight did not go her way" by bringing "a knife to a fist fight."

We disagree that the defendant's prearrest statements sufficed to prove beyond a reasonable doubt that she was the initial aggressor.  Although it may have been "plausible" to

7

infer from the statement "I got physical with her, and she got physical back," that the defendant "struck first," that inference "cannot bear the weight of proof beyond a reasonable doubt." Commonwealth v. Lee, 460 Mass. 64, 71 (2011), quoting Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010). Cf. Commonwealth v. Silva, 482 Mass. 275, 289 (2019) (approving jury instruction that "any inference constituting an element of an offense must be established beyond a reasonable doubt"). Particularly given the defendant's description of the drawn-out nature of the altercation and the distraught condition in which she was questioned,[2] more evidence was required for a rational trier of fact to find beyond a reasonable doubt that the defendant was the initial aggressor and, even if she was, that she did not attempt to "withdraw[] in good faith from the conflict." Commonwealth v. Chambers, 465 Mass. 520, 528 (2013), quoting Commonwealth v. Maguire, 375 Mass. 768, 772 (1978). Similarly, the defendant's acknowledgement to the officers that she had a knife did not establish beyond a reasonable doubt the inference that she used it to "escalate" the altercation.

---

[2] Specifically, the defendant had just experienced the altercation, walked multiple blocks from her house in bare feet, leaving her children behind, and was awaiting medical attention for a head injury.

The Commonwealth's case did not improve after the defendant testified on her own behalf. Even viewing that testimony in the light most favorable to the Commonwealth, it shows that the defendant did retreat from the conflict: first from her bedroom to the living room, and then from her home altogether, without her shoes and other essential belongings. Contrary to the Commonwealth's argument, this testimony does not show that the defendant chose to "return[] and continue[] the altercation," instead of retreating. The Commonwealth also argues that the defendant "opted to escalate the altercation by grabbing a knife, and then using said knife against the victim," but, again, the defendant's testimony does not support that conclusion. She testified that she removed a pocketknife from the nightstand in order to defend herself from her girlfriend, who was taller, larger, and had punched her until the defendant fell to the floor. She testified that she was concerned for her safety when she took out the knife, and that only an accidental grazing of the girlfriend's thumb occurred during their struggle.

While the jury were "entitled to disbelieve the evidence that the defendant acted in self-defense," Commonwealth v. Fluker, 377 Mass. 123, 128 (1979), the Commonwealth presented little evidence other than the previously-discussed recorded

9

statements by the defendant to satisfy its burden of proof.  The defendant's girlfriend did not testify.  There was no testimony by any other witness to the altercation, and therefore no "conflicting versions of events" in the record for the jury to resolve.  Commonwealth v. Colas, 486 Mass. 831, 836 n.7 (2021).  See Commonwealth v. McGann, 484 Mass. 312, 326 (2020).  Nor did the Commonwealth present any circumstantial evidence sufficient to disprove self-defense.  See Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011).  It introduced the girlfriend's medical records in evidence, but those records, which showed a small abrasion or laceration on her forearm or thumb, did not undermine the defendant's testimony as to how the knife was used.

The Latimore standard requires the evidence to be more than merely "sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." Latimore, 378 Mass. at 677, quoting Commonwealth v. Sandler, 368 Mass. 729, 740 (1975).  "Additionally, the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'"  Id., quoting Commonwealth v. Cooper, 264 Mass. 368, 373 (1928).  Thus, "it is not enough for the appellate court to

find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." Latimore, supra at 677-678. Here, the inference that the defendant was the first aggressor, based on nothing more than ambiguous statements made to the officers at the house to which she had retreated, was simply not strong enough, standing alone, to prove beyond a reasonable doubt that she did not act in self-defense.

Accordingly, the judgments of conviction are reversed, and the verdicts are set aside. Judgments shall enter for the defendant.

So ordered.

By the Court (Vuono, Shin & Toone, JJ.[3]),

Assistant Clerk

Entered: May 28, 2024.

---

[3] The panelists are listed in order of seniority.

11