UNITED STATES of America,
Appellee,

v.

**Fred Eugene FAIRFIELD and Harold Edgar Halley, Appellants.**

No. 75–1004.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1975.

Decided Nov. 10, 1975.

Dick H. Mudge, Jr., Edwardsville, Ill., for Harold Edgar Halley.

Charles A. Gallipeau, Kansas City, Mo., for Fred Eugene Fairfield.

Anthony Nugent, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY and HENLEY, Circuit Judges, and REGAN,* District Judge.

REGAN, District Judge.

Fred Eugene Fairfield and his co-defendant Harold Edgar Halley were convicted by a jury of violating the conspiracy statute (Section 371, 18 U.S.C.) by conspiring to conceal, sell and dispose of a stolen motor vehicle which was and had been moving as part of interstate commerce. The jury was unable to agree on another count which charged defendants with the substantive offense of transporting the motor vehicle from Illinois to Missouri in violation of Section 2312, 18 U.S.C., and on a gun charge against Fairfield alone. Both defendants appealed. Defendant Halley died prior to the submission of his appeal, so that the prosecution as to said defendant has abated. *Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971); *Pipefitters Local No. 562 v. United States,* 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972); *Crooker v. United States,* 325 F.2d 318 (8th Cir. 1963). Fairfield, the remaining appellant, challenges (1) the sufficiency of the evidence; (2) the legality of his arrest and the search of an automobile; and (3) instructions to the jury.

Evidence adduced by the Government (none was offered on behalf of defendants) showed: An unpaid confidential informant (Hank Gravino) had been furnishing reliable information to various law enforcement officials, including Jack Knox, a Special Agent with the Federal Bureau of Investigation. Hank was a most unusual undercover informant. A young assistant manager of a finance company in Kansas City, Missouri, he had no criminal record or aspirations but had undertaken, as a public service, to ferret out violations of law. Hank was

acquainted with an ex-convict, Arthur Buschman, a used car dealer in California, Missouri, who was not averse to making "easy money" by participating in illegal transactions.

In the course of their dealings, Hank had led Buschman to believe that he had underworld connections and was desirous of buying any kind of stolen property. As it happened, defendant Halley (whom Buschman had known for four years only as "Paul" and whose conviction for murder had recently been reversed) approached Buschman several weeks before the events in issue concerning his pressing need for a trustworthy fence for late model automobiles. Having been taken in by Hank's story of underworld connections, Buschman vouched for Hank's criminal "legitimacy" and gave "Paul" one of Buschman's business cards on which he wrote Hank's home and office telephone numbers.

About two weeks later Buschman was told by Paul in a telephone conversation that he had a 1973 white Eldorado Cadillac "without papers" priced at $2,500, a third of its actual value. Buschman informed Hank of the availability of the automobile, and arrangements were made for Paul to bring it to Kansas City from the St. Louis Metropolitan area. It developed, however (as Paul later told Hank), that there were too many problems relating to that car to risk closing the deal.

A week later, Paul again called Buschman stating that he had for sale another 1973 Eldorado Cadillac "without papers," this one brown-over-brown, which he priced at $3,000. Buschman relayed this information to Hank, and again a deal was set up whereby accompanied by another automobile the stolen car would be driven from the St. Louis Metropolitan area and delivered to Hank in Kansas City for $3,000. Hank had reason to believe that Halley would probably be armed. The understanding agreed upon was that Paul and his "partner" were to tele-

* JOHN K. REGAN, United States District Judge, Eastern District of Missouri, sitting by designation.

phone Hank when about two hours out of Kansas City and again call him upon their arrival, this procedure being the same as that which had been agreed upon for the earlier·aborted sale of the white Cadillac.

As agreed, Paul called Hank from Columbia at 11 A.M. on November 20, 1973, and again called him at about 1 P.M. that day from the Holiday Inn in downtown Kansas City. Inasmuch as the actual delivery place had not yet been decided upon, Hank suggested that Paul and his partner have lunch and call back later for more definite instructions. Knox, who had been kept continually informed by Hank of all developments, directed him to arrange for the delivery of the automobile at the Liberty Memorial Mall in Kansas City. Accordingly, when Paul called back, he was instructed by Hank to bring the car to the mall between 2:30 and 3 P.M., and told that Hank would have a tow truck there together with the purchase price of the car.

The Liberty Memorial is located at the northern end of a long mall. The mall is traversed by a U–shaped road, the open end of the U being at the south (entrance) end. Vehicles can enter the mall and travel only on this road, moving north on the east side thereof, turning west and then south to exit at the bottom of the U on the west side of the mall. On the mid-week afternoon of November 20, the mall was virtually deserted, and the weather was cold and rainy.

Knox, accompanied by another special agent and a deputy sheriff, commenced surveillance of the motel area and at the same time directed other agents to conduct surveillance in the vicinity of the mall. Nothing of significance was seen near the Holiday Inn. The surveillance of the mall area was set up at about 2:30 P.M. Shortly thereafter, the agents observed a brown-over-brown Cadillac enter the mall and move northward toward the Memorial. The car disappeared from their sight and did not come out. Knox was then advised by radio that a Cadillac fitting the description of the car they were expecting had been seen. The agents were directed to maintain their position, and Knox and the other officers with him proceeded to the mall. Circling the mall they verified the presence of an unoccupied brown-over-brown Cadillac on the west side of the mall parked parallel with the curb about four feet behind a 1969 2-door blue Cadillac licensed in Illinois in which two men were seated. The brown car had Missouri license plates. After conferring, the agents returned to the place where the Cadillacs were parked. By that time defendant Fairfield was standing at the right rear panel of the blue Cadillac. Knox parked his car immediately in front of that car to cut off possible escape, and approached Halley, who was behind its wheel, while another agent went over to Fairfield. Defendants were requested to identify themselves. Halley showed the agents a gun permit containing an Illinois address. Fairfield displayed an Illinois driver's license listing his residence as Illinois. He volunteered the information that the blue Cadillac had been borrowed from an Illinois woman for the trip. Both defendants disclaimed any knowledge of the brown Cadillac, and when asked why they had parked so close to that car their only response was that that was "just where they had parked."

Upon ascertaining that the defendants were Illinois residents, the agents placed them under arrest for interstate transportation of a stolen motor vehicle and frisked them for weapons and for the keys to the brown Cadillac. The blue Cadillac was then searched by Knox for weapons and for the keys. Other agents examined the locked brown car and within a few minutes discovered that the public identification number on its dashboard had been altered by covering the true number with a tape bearing another number. At about the same time Knox found a revolver under the front seat on the passenger's side of the blue Cadillac. A search of the passenger compartment having failed to turn up the keys to the other car, Knox continued his search for

the keys by opening the trunk, again without success. He did note, however, other license plates in the trunk. Shortly after the defendants were removed to official cars, one of the agents found the keys to the brown Cadillac in the grass at the place where Fairfield had stood next to the blue Cadillac.

The brown Cadillac had been stolen in Chicago, Illinois, some ten months earlier. The Missouri license plates which were on the car had been issued for a 1970 Volkswagen which a Granite City, Illinois, automobile dealer had purchased in the latter part of October, 1973. Fairfield had access to the area where the dealer stored license plates which he periodically removed from used cars.

### Sufficiency of Evidence

■ The evidence, both direct and circumstantial, amply supports the jury's finding of a conspiracy to conceal, transport and sell in Missouri the brown Cadillac which had been stolen in Illinois, and that Fairfield was a participant in that conspiracy. *United States v. Overshon,* 494 F.2d 894 (8th Cir. 1974); *United States v. Hutchinson,* 488 F.2d 484 (8th Cir. 1973); *Nassif v. United States,* 370 F.2d 147 (8th Cir. 1966).

■ Defendant's principal argument on this issue is that the corpus delicti was not established, contending that there is an entire want of evidence tending to prove that either defendant actually knew that the 1973 Cadillac had been moving as a part of interstate commerce from Illinois to Missouri. Conceding that proof of knowledge of the federal "jurisdictional aspect" of a crime is unnecessary to sustain a conviction for a substantive offense (e. g., theft from an interstate shipment), he contends that there can be no *conspiracy* to commit such an offense absent defendant's knowledge of the interstate involvement. Cited are Second Circuit cases, commencing with *United States v. Crimmins,* 123 F.2d 271 (1941).

However, in *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Supreme Court has put this issue to rest, holding that "where a substantive offense embodies only a requirement of *mens rea* as to each of its elements, the general federal conspiracy statute requires no more." Said the Court (420 U.S. at 694, 95 S.Ct. at 1268):

> Given the level of intent needed to carry out the substantive offense, we fail to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate. Therefore, we again conclude that imposition of a requirement of knowledge of those facts that serve only to establish federal jurisdiction would render it more difficult to serve the policy behind the law of conspiracy without serving any other apparent social policy.

### Validity of Arrest and Search

■ We briefly summarize the pertinent facts: Prior to requesting defendants to identify themselves, agent Knox had reliable information to the effect that a resident of Illinois who would probably be armed had agreed to deliver in Kansas City, Missouri, a 1973 brown-over-brown Cadillac Eldorado "without papers" for sale at a fraction of its actual value and that another car would accompany the one to be sold. At about the time Knox had fixed for the seller and his partner to close the transaction, an automobile answering the description of the stolen car was observed being driven to the very location which Knox himself had designated. Minutes later, that car was seen parked and locked with no one inside. There was no one in its immediate vicinity other than the two defendants who were seated in the apparent companion car with Illinois license plates which was parked about four feet in front of the brown Cadillac. And although the weather was cold and rainy and he was lightly clad, Fairfield had already alighted and was standing at the right rear panel of the blue Cadillac by the time the agents' car pulled in front of it. Under the circumstances,

the officers were certainly warranted in asking defendants to identify themselves (*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *cf. United States v. Harflinger*, 436 F.2d 928, 932 (8th Cir. 1970)), and then, upon learning they were residents of Illinois, arresting them. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In our judgment the arrests were valid and the search which followed was fully justified. *Cf. Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973), and *Klingler v. United States*, 409 F.2d 299 (8th Cir. 1969).

█ We add that the present is wholly unlike those cases in which the "fruits" of an unlawful search are the basis upon which convictions were obtained. The only tangible "fruit" of the search which was admitted into evidence was the gun which Knox found under the front seat. Information obtained in the investigative stop, such as the identity and residence of the suspects and the voluntary statement of Fairfield that he had borrowed the 1969 car from a lady friend in Illinois, was unquestionably admissible. As for the gun, it was relevant only in connection with the firearms charge against Fairfield. Defendants did not request any limiting instructions, and there is no contention that the Government's jury argument as to the gun pertained to the conspiracy charge. We fail to discern any possible prejudice to Fairfield, particularly in view of the failure of the jury to agree on the gun charge itself as well as on the Dyer Act count. Even if error be assumed, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*Instructions*

Fairfield's final contention is that the Court erred in instructing on "recent possession" and in failing to specifically require in the conspiracy instructions that the jury find that he had knowledge of the interstate movement of the stolen vehicle. We quote Fairfield's entire objection to the charge:

MR. GALLIPEAU: I'm ready to proceed if Mr. Mudge prefers, on behalf of Defendant Fairfield, I would first object to the instruction given by the Court and numbered Arabicly No. 5, which is the so-called presumption of innocence instruction.

In Count I as it pertains to Defendant Fairfield, I would object to all the instructions submitted by the Court, the same would be through Count III.

To clarify my statements, your Honor, I'm objecting to all the instructions in Count II on behalf of Defendant Fairfield and particularly with regard to the instruction the Court gave on recent possession of stolen property.

With regard to Count III, I object to all of the instructions given by the Court as to Defendant Fairfield as being instructions on insufficient evidence and lack of proof to so instruct the jury.

I have no other objections.

Obviously Fairfield's objections to the instructions were general and wholly failed to state the grounds as required by Rule 30, Federal Rules of Criminal Procedure.

Counsel for Halley made more specific objections, but these objections were not adopted by Fairfield and, in any event, are lacking in merit.

█ We have already held that proof of defendant's knowledge of the jurisdictional element of the crime is not required. As for the "recent possession" instruction, it is true (as Judge Collinson explicitly told the jury) that "ten months is stretching recently stolen property a long ways, as ten months is not very recent." However, the reasonableness of the inference is to be considered in the context of all the evidence. The cases cited by Fairfield (e. g., *United States v. Martinez*, 466 F.2d 679 (5th Cir. 1972); *United States v. Riso*, 405 F.2d 134 (7th Cir. 1968); *Hale v. United States*, 410 F.2d 147 (5th Cir. 1969); and *Lee v. United States*, 363 F.2d 469 (8th Cir. 1966)) do not support his claim of error. In each, no error was found in giving a

recent possession instruction, the periods involved ranging from five to fifteen months. Under all the facts and circumstances of this case, it was for the jury to determine whether defendant's possession was sufficiently recent.

The instructions as a whole fairly submitted the issues. No reversible error appears.

The judgment as to defendant Halley is vacated and the case is remanded to the District Court with directions to dismiss the indictment against him. The judgment as to defendant Fairfield is affirmed.