COMMONWEALTH vs. JOHN BENBOW (and a companion case[1]). August 16, 1983. *Threshold Police Inquiry. Practice, Criminal,* Challenge of jurors, Instructions to jury. *Identification.*

The defendants appeal from their convictions of armed robbery and receiving a stolen motor vehicle. 1. At the voir dire there was evidence that the police officers who arrived at the scene of the robbery elicited from the two victims information that the robbery was perpetrated at about 8:00 P.M. by two men who made off with their purses; that the two men had driven up in a white Firebird or Camaro with a Massachusetts vehicle registration plate beginning "758"; that the driver was a white male with short black hair; that the other man, who left the car and confronted the victims, was black, brandished a knife, and wore a tan jacket with white coloring on the sleeves. There was evidence that the police officers broadcast these descriptions over the police radio and then drove the victims around in a police cruiser in an effort to locate the robbery vehicle; that two officers in another cruiser who had received the broadcast description a few minutes earlier saw three individuals, two black and one white, talking together on a sidewalk about two miles or less from the scene of the robbery; that the three made a sudden response ("their heads snapped") to seeing the cruiser; that one of the two blacks, the defendant Benbow, wore a tan jacket with white on the sleeves; that the officers drove up on the sidewalk, asked the three what they were doing, patfrisked Benbow, and found a knife; that, when the knife was found, the white man, the defendant Campos, fled and was pursued by one of the officers; that in the course of the chase Campos discarded various items (a credit card, traveler's checks, a checkbook) bearing the names of the victims; that, when he received a broadcast of Campos's apprehension with articles from the robbery, the officer who had remained with the two blacks placed them under arrest, searched them, and found on Benbow's person a cigarette case, later identified by one of the victims as the one which had been in her purse, and a popped automobile ignition; that when the victims arrived in the cruiser they both identified Benbow as the robber who had confronted them with the knife; that it was then about twenty or twenty-five minutes after the robbery; that the police then found a white Camaro with a Massachusetts vehicle registration plate, the first three numbers of which were "758," parked behind a dumpster about twenty feet from where the three men had been found in conversation; that the ignition of the Camaro had been popped; and that the popped ignition found on Benbow's person fitted the Camaro. On this evidence the judge did not err in ruling that the stop and frisk, the later search of Benbow and the identifications by the victims were lawful. The broadcast description of the robbers — particularly the jacket worn by Ben-

---

[1] Against John Benbow and Daniel L. Campos.

bow — gave the police officers a firmer basis for their suspicion than the officers had in *Commonwealth* v. *Bacon*, 381 Mass. 642 (1980), and *Commonwealth* v. *Thibeau*, 384 Mass. 762 (1981); and if their suspicion was reasonable enough to warrant a threshold inquiry, the police could properly frisk the suspects for weapons. *Terry* v. *Ohio*, 392 U.S. 1, 24 (1968). Thereafter the suspicious circumstances quickly escalated into probable cause, as the knife was found on Benbow and Campos fled and discarded articles taken in the robbery. The evidence supported a finding that the second search of Benbow followed the recovery of the stolen articles and that the police at that time had probable cause to (and did in fact) arrest and search Benbow. The showup on the street within minutes after the robbery was made somewhat less suggestive than is often the case by the presence of an extra suspect and was well within the latitude given the police and recognized in *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371 (1980), and the numerous cases therein cited. 2. There is no merit to the contention that the judge erred in denying the motion to bar impeachment by prior convictions should the defendants take the stand. *Commonwealth* v. *Leno*, 374 Mass. 716, 718 (1978). *Commonwealth* v. *Tabor*, 376 Mass. 811, 824 (1978). *Commonwealth* v. *Diaz*, 383 Mass. 73, 80 (1981). 3. It is doubtful that the defendants' addresses, which were identical, would have to be suppressed even if elicited before Miranda warnings were given. See *Commonwealth* v. *Johnson*, 372 Mass. 185, 194 (1977). If the law should be otherwise, any error was harmless beyond a reasonable doubt in light of the overwhelming evidence associating them in the aftermath of the robbery. 4. The record in this case is inadequate to substantiate the claim of Benbow that the prosecutor improperly exercised his peremptory challenges to exclude blacks from the jury. All that the record suggests is that there were ten blacks on the venire, that the prosecutor challenged four of them, that the defendants challenged two, and that two, both women, were seated on the jury. Contrast the foundation laid in *Commonwealth* v. *Soares*, 377 Mass. 461, 473 n.8 (1979). The record gives no hint of the number of jurors in the venire or the percentage of whites challenged by the prosecutor. Contrast *id.* at 490. The numbers by themselves are not particularly compelling. Compare *Commonwealth* v. *Walker*, 379 Mass. 297, 300-301 (1979). The trial judge saw a complete picture; we have no basis in this record to second guess his judgment. See *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981). 5. Although there was no objection at trial, the Commonwealth acknowledges that the charge concerning a presumption arising from possession of recently stolen property was in error, as was later held in *Commonwealth* v. *Burns*, 388 Mass. 178, 180-183 (1983). Another weakness in the charge, one which was objected to, was the judge's failure on request to give the charge concerning possible mistaken identification from *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972), and *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 302, 310-311

(1979). The charge read as a whole was reasonably well balanced, and identification was hardly a pivotal issue — particularly as to Campos, who was never positively identified except as consistent in skin and hair coloring with the driver. From any perspective the case against the defendants was overwhelming. They were each found about fifteen or twenty minutes after the robbery in possession of bankbooks, credit cards, traveler's checks bearing the names of the victims and other items which could only have come from the victims' purses. They were found next to the vehicle used in the robbery which had been stolen earlier in the day; and its owner produced a key which fit the popped ignition found on Benbow's person. We have no question that the errors in the charge, in these circumstances, could not have influenced the outcome of the trial and were harmless beyond a reasonable doubt.

*Judgments affirmed.*

*Rosemary Ford* for John Benbow.
*James R. Logar* for Daniel L. Campos.
*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.