## COMMONWEALTH *vs.* WARREN KIRKPATRICK.

No. 88-P-774.

Franklin. October 11, 1988. — November 22, 1988.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Receiving Stolen Goods. Practice, Criminal,* Bill of particulars, Required finding, Instructions to jury, Cross-examination by prosecutor. *Evidence,* Consciousness of guilt.

At the trial of an indictment for receiving stolen property, there was sufficient evidence that the defendant knew the property was stolen to warrant the denial of his motion for a required finding of not guilty. [598-599]

At a criminal trial in which the evidence against the defendant was substantial, the judge's instructions to the jury on consciousness of guilt, which covered the basic charge recommended in *Commonwealth* v. *Toney,* 385 Mass. 575, 582-585 (1982), but not the supplemental charge mentioned in that decision at 585-586 n.6, presented no substantial risk of a miscarriage of justice. [599-600]

At the trial of an indictment for receiving a stolen boat, motor and trailer, there was no error in the trial judge's instructions that, if the jury found the defendant to be in possession of "recently stolen" property, they could, if they chose, infer that the defendant knew the property was stolen, where, despite an eight-month time lapse between the theft of the property and the defendant's acquisition of it, evidence of the unique nature of the property and the defendant's misleading statements and conduct established a reasonable factual basis for the inference to be drawn. [600-602]

At the trial of an indictment for receiving stolen property, there was nothing in the judge's instructions to the jury concerning the defendant's explanation of his possession of the stolen property which explicitly, or by implication, shifted the burden of proof of scienter to the defendant. [602-603]

Although at the trial of a criminal case the prosecutor twice improperly asked the defendant to comment on the credibility of another witness, there was no substantial risk of a miscarriage of justice, where the two unobjected-to questions constituted the only infractions in a lengthy cross-examination. [603]

INDICTMENT found and returned in the Superior Court Department on June 12, 1987.

The case was tried before *William H. Welch*, J.

*Wendy Sibbison* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

GREANEY, C.J.   The defendant appeals from his conviction of receiving a stolen boat, motor, and trailer. He argues that (1) the Commonwealth's evidence that he knew the property was stolen was insufficient as matter of law, (2) there was error in the jury instructions, and (3) the prosecutor engaged in improper cross-examination. We affirm the conviction.

There was evidence of the following at trial. Over the weekend of September 8-9, 1984, Bruce Davin left his fifteen and one-half foot beige Browning fiberglass boat, 140 horsepower Mercury outboard motor, and E-Z Loader trailer at a marina in Orange for repairs. On September 10, 1984, the owner of the marina found that the steel cable securing the boat had been cut, and that the boat, motor, and trailer were gone. The theft was reported to the State police.

On May 30, 1987, Davin was riding in a friend's boat on a reservoir in Vermont when he spotted a boat that he thought could be his stolen boat. The boat was being operated by the defendant, who was then the police chief of Ashfield. Wishing to investigate further, Davin found a game warden who accompanied him to inspect the boat and to question the defendant. When confronted by Davin and the game warden, the defendant stated that he had purchased the boat legally for $1,200, but he did not reveal the name of the seller. As the game warden began inspecting the boat, however, he observed a number of peculiarities about the boat's condition. The warden noticed that the boat had been crudely repainted blue and that some beige paint (the boat's original color) was still showing through. The serial number was now located on a metal tag screwed into the wrong side of the boat's stern, and a metal tag had been screwed over the area where the serial number, which had been obliterated, had originally appeared. Also, the number on the motor had been removed and a new number substituted. As a result of his inspection, the warden asked the defendant

to bring the boat to a boat landing to discuss the matter further with the local Vermont police.

During the investigation into the defendant's acquisition of the stolen property conducted by a Vermont police officer, it was further discovered that the trailer that carried the boat had been crudely repainted black and it lacked any serial number. In the discussion that ensued, the defendant told the police officer that he had bought the boat approximately two years before from an unnamed deputy sheriff. Then, in an aside with the officer, the defendant flashed his police identification apparently to let the officer know of his position as police chief. At this time the defendant told Davin that he acquired the boat from a police officer who was going through a divorce. The defendant then also told Davin that he would return the boat to him that day. Later, the defendant called Davin and expressed an interest in buying the boat back and volunteered to "look into" the boat's history. The defendant told Davin that the "boat would be hard to trace," because, although he insisted he had purchased it from "somebody in law enforcement," he maintained that it had come to him with a transfer of registration from Florida.

The State police were eventually called into the case. Upon questioning, the defendant told the investigating State police officer that he had purchased the boat from a guard at the Franklin County house of correction, whom he named. He could not, however, give the officer a date for the purchase other than suggesting that he had acquired the boat sometime prior to June, 1985. At trial, the named guard testified that the defendant twice asked him to corroborate this false story. The guard had refused and the defendant eventually told him that he had lied to the State police because, if he revealed the true source of the property, "he'd end up in a river."

The day after being questioned the defendant went back to the State police and voluntarily gave a new statement because, as he put it, "My conscience was getting to me. I, uh, know the deals up, I did it. I can't live with myself." The defendant recounted that on April 24, 1985, he had gone to Cape Cod to visit an aunt (whom he never did see) and had noticed the

boat and trailer parked off the southbound side of Route 3. On his way back to Ashfield one or two days later, the boat and trailer were still there, so, according to the defendant, he "backed up to the friggin' thing, [and] . . . dropped it on my [trailer] ball. . . ." The defendant also admitted in his statement that he knew that the boat and trailer had been either abandoned or stolen, but he decided to take them anyway.

1. The defendant proposes a technical argument that the Commonwealth's proof that he knew the property was stolen was insufficient as matter of law. He points out that the Commonwealth stated in its bill of particulars that its proof of the crime would depend in part on the fact that the boat's identification numbers had been obliterated or altered. However, he argues, the Commonwealth failed either to allege in the particulars that the defendant actually knew of the tampering with the identification numbers or to establish that fact at trial. In the defendant's view, this left the Commonwealth's proof of the scienter element of the crime resting on nothing more than consciousness of guilt evidence (lies that the defendant told investigators), which by itself cannot support a judgment of conviction. Thus, the defendant concludes, he was entitled to the entry of a required finding of not guilty.

There is nothing to the argument. The particulars in this case were not intended to be, nor could they reasonably have been taken as, a complete statement of all the Commonwealth's evidence. See *Commonwealth* v. *Hare*, 361 Mass. 263, 270 (1972). The particulars were a general outline of the Commonwealth's proof, and they were stated in sufficient detail to give the defendant adequate notice of the factual basis of the charge. *Commonwealth* v. *Leavitt*, 17 Mass. App. Ct. 585, 588, cert. denied, 469 U.S. 835 (1984). The Commonwealth did not have to allege in its bill of particulars that the defendant actually knew of the tampering with the identification numbers before the Commonwealth could introduce circumstantial evidence that would warrant that inference. The evidence, at trial, summarized above, was sufficient to allow the jury to infer that the defendant had caused, or at least knew of, the tampering with the identification numbers of the boat and motor.

Moreover, the Commonwealth's evidence formed a strong fabric of circumstantial proof from which the jury could infer the required scienter element of the crime. As to scienter, a defendant may be convicted of receiving stolen property "if he either knew or believed [the] property was stolen property at the time it came into his possession, or at any time while it was in his possession he ascertained that it was stolen property and he undertook to deprive the owner. of his rightful use of it." *Commonwealth* v. *Kronick*, 196 Mass. 286, 288 (1907). See *Commonwealth* v. *Peopcik*, 251 Mass. 369, 371 (1925); *Commonwealth* v. *Sandler*, 368 Mass. 729, 740-741 (1975); *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 648, 651 (1977). We conclude that the Commonwealth's proof, when considered under the governing standard, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), was sufficient to withstand the defendant's motion for a required finding of not guilty.

2. To prove that the defendant had the requisite state of mind, the Commonwealth relied, in great part, on evidence of his false and misleading statements and his suspicious conduct as the investigation intensified. Because some of this evidence carried overtones of consciousness of guilt, the defendant requested jury instructions on the proper evaluation of such evidence. The judge gave instructions that covered the basic charge recommended in *Commonwealth* v. *Toney*, 385 Mass. 575, 582-585 (1982), but he did not give the supplemental charge mentioned in that decision at 585-586 n.6. See *Commonwealth* v. *Matos*, 394 Mass. 563, 565-566 (1985). The defendant maintains that the omission of the supplemental charge requires a new trial.

The instruction on consciousness of guilt requested by the defendant's trial counsel did not clearly request the supplemental *Toney* instruction. In fact, the requested instruction misstated the law by asking that the jury be told that consciousness of guilt evidence had no probative value. The instructions given by the judge covered the points considered important in the *Toney* case and made direct reference to the possibility of an innocent explanation on the defendant's part. The defendant's

experienced trial counsel made no objection to the charge. Thus, contrary to the defendant's argument, we consider the issue to be before us for review under the substantial risk of a miscarriage of justice standard. Here, because the evidence against the defendant was substantial and because basic *Toney* requirements were met, we discern no substantial risk of a miscarriage of justice.

3. (a) The judge instructed the jury that, if they found that the defendant was in possession of recently stolen property, they could draw the inference, if they chose to, that he knew the property was stolen. The defendant's trial counsel objected to the instruction. The defendant argues that the approximately eight-month gap between the theft of the property and the defendant's acquisition of it does not indicate that the property had been recently stolen. [1] He maintains that such a long hiatus vitiates, as matter of law, the rational basis on which the jury could make the proper connection between possession and knowledge of the theft. He urges that the giving of the instruction was error which requires a new trial.

The inference permitted by possession of recently stolen property can be a strong one. It may act as a substitute for direct proof of guilty knowledge. However, "[c]autious vigilance must be maintained against the employment of a naked legal principle in a factual setting which provides no reasonable basis for the principle's application." *Hale* v. *United States*, 410 F.2d 147, 150 (5th Cir.), cert. denied, 396 U.S. 902 (1969).

The question whether the evidence sufficiently establishes a reasonable factual basis for the inference is initially one of law for the judge to determine. That decision necessarily has to be made on a case basis, see *Commonwealth* v. *Kelley*,

---

[1] It should be noted that the boat, motor, and trailer were stolen on the weekend of September 8-9, 1984, and, according to the defendant's testimony, they were found by the side of the road on or about April 25, 1985. The jury might have disbelieved this testimony. Since there was no earlier date for the defendant's acquisition of the property, the prosecutor, defense counsel, and the judge appear to have accepted the eight-month period as the appropriate measuring point for determining whether the instruction on the inference should be given.

333 Mass. 191, 194-195 (1955), with regard to such consider-
ations as the character of the property, its size and appearance,
its marketability, and the circumstances of its recovery. "In
reaching its determination, the trial court need not be oblivious
to other evidence pointing to the accused's guilt; to the contrary,
it is free to judge the reasonableness of the inference in the
context of all the evidence." *Hale* v. *United States*, 410 F.2d
at 151.

The defendant maintains that eight months is simply too
long to justify a recent theft instruction, and that the judge
should have ruled the inference out of the case as matter of
law. It is true, as the defendant points out, that many of the
Massachusetts cases mentioning the inference have involved
a short time lapse between theft and possession. See, e.g.,
*Commonwealth* v. *Burns*, 388 Mass. 178, 178-180 (1983)
(same day); *Commonwealth* v. *Smith*, 3 Mass. App. Ct. 144,
146 (1975) (three months); *Commonwealth* v. *Taylor*, 10 Mass.
App. Ct. 452, 453, 458 (1980) (four months); *Commonwealth*
v. *Porter*, 15 Mass. App. Ct. 331, 332 (1983) (two days);
*Commonwealth* v. *Rossi*, 15 Mass. App. Ct. 950, 952 (1983)
(a few minutes); *Commonwealth* v. *Benbow*, 16 Mass. App.
Ct. 970, 971-972 (1983) (fifteen to twenty minutes); *Common-
wealth* v. *McCann*, 16 Mass. App. Ct. 990, 991 (1983) (same
day); *Commonwealth* v. *Saia*, 18 Mass. App. Ct. 762, 766
app. 2 (1984) (eleven days). These are cases, however, in
which the defendant had the misfortune of being brought to
justice quickly.

As *Commonwealth* v. *Sandler*, 368 Mass. 729 (1975), makes
clear (at 744), "[i]t is not appropriate to resort to judicial fiat
to establish a uniform period of time on the expiration of which
stolen property ceases to be 'recently stolen.'" In fact, *Sandler*
refers to, and cites, several Federal decisions "involving periods
of from four months to fifteen months after the theft." *Ibid.*
In addition to the decisions cited in *Sandler*, there are many
other decisions in which the inference has been found to have
factual support despite a long passage of time. See, e.g., *Hale*
v. *United States*, 410 F.2d at 149-151 (5th Cir.) (six and one-
half months); *United States* v. *Martinez*, 466 F.2d 679, 682,

688 (5th Cir. 1972), cert. denied sub nom. *Berman* v. *United States*, 414 U.S. 1065 (1973) (eleven months); *United States* v. *Johnson*, 741 F.2d 854, 855, 857-858 (6th Cir.), cert. denied, 469 U.S. 1075 (1984) (thirteen months); *United States* v. *Fairfield*, 526 F.2d 8, 12-13 (8th Cir. 1975) (ten months); *United States* v. *Tisdale*, 647 F.2d 91, 93 (10th Cir.), cert. denied, 454 U.S. 817 (1981) (sixteen months); *United States* v. *Peterson*, 522 F.2d 661, 662, 664-665 (D.C. Cir. 1975) (seven and one-quarter months). It is obvious from these cases, and the *Sandler* decision, that the term "recently" is a relative one, depending on the circumstances shown by the evidence. The judge has to scrutinize the evidence carefully and to draw the line if it appears that the instruction will lead the jury beyond legitimate inference.

Here, the eight-month interval tended to weaken the inference. On the other hand, the property was unique, and the defendant's possession of it occurred in a context fraught with suspicion brought about by his own misleading statements and conduct, including the eyebrow-raising tale of finding the boat by the side of the road. See *United States* v. *Cowden*, 545 F.2d 257, 264 (1st Cir. 1976), cert denied, 430 U.S. 909 (1977) (incredible explanation itself permits inference of guilt). These factors tended to strengthen the inference and to overcome doubts as to its reasonableness. See *United States* v. *Grossman*, 614 F.2d 295, 299 (1st Cir. 1980) (government's evidence sufficient to render defendant's explanation of possession unsatisfactory). In light of the discussion in the *Sandler* decision, and the evidence considered as a whole, we are not prepared to say, as matter of law, that the issue should not have been submitted to the jury. We note that the judge carefully explained to the jury that they would have to find that the property had been recently stolen before they could make the inference, that the inference was one that they need not draw, and that the Commonwealth had the burden of establishing beyond a reasonable doubt that the defendant knew that the property was stolen.

(b) The criticized portion of the judge's instruction concerning a defendant's explanation of his possession of the stolen property did not, as the defendant claims, suggest that the

defendant had the burden of disproving the element of knowledge in violation of the principles expressed in *Commonwealth v. Burns*, 388 Mass. at 182-183, and *Commonwealth v. Kameese*, 388 Mass. 1004 (1983). Evaluated in its entirety, see *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 278 (1982), and in light of the repeated and clear instructions by the judge on the Commonwealth's burden of establishing the scienter element of the crime, the instruction reasonably could be taken only as advising the jury of two points. First, that before drawing any inference of knowledge, the jury should carefully consider the explanation given by the defendant who had testified in his own behalf. Second, that under no circumstances did the defendant have the burden of disproving knowledge. There was nothing in the instruction which explicitly, or by implication, shifted the burden of proof of scienter to the defendant. Cf. *Commonwealth* v. *Burns*, 388 Mass. at 182-184 (instruction left the jury with the impression that the defendant had an obligation to disprove the scienter element).

4. Two questions posed by the prosecutor in cross-examination of the defendant asked the defendant to comment on the credibility of another witness and were improper. See *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708-709 (1984). There was no objection to the questions, however, and they constituted the only two infractions in a cross-examination covering over forty pages of transcript. Contrast *ibid.* (one hundred improper questions covering over one hundred pages of transcript). For the reasons stated in *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 477-478 (1985), we discern no substantial risk of a miscarriage of justice.

*Judgment affirmed.*