After a jury-waived trial in District Court, the defendant was convicted on three counts of intimidation of a witness, G. L. c. 268, § 13B, and two counts of receiving stolen property, G. L. c. 266, § 60.[2] He argues that the evidence was insufficient to support these convictions. We affirm.
Background. Sometime on or about July 4, 2015, a GMC Denali truck owned by Brian Casey was stolen from the premises of his business, Casey Landscaping, located in Mashpee. He had left certain items in the truck, including a self-inking signature stamp bearing his name and work proposals on Casey Landscaping letterhead. On July 5, at 12:30 A.M. , the truck was discovered, on fire, behind a supermarket in Taunton.
On July 12, Falmouth police officers encountered and eventually arrested the defendant, who they described as being "very fidgety" and "antsy." The defendant was a former employee of Casey Landscaping but had been fired in June, making him, in Casey's words, "upset" and "angry." A subsequent search of the defendant's backpack revealed Casey's signature stamp and work proposals.[3]
On July 22, two officers of the Mashpee police department conducted a recorded interview with the defendant. The defendant stated that he came into possession of the signature stamp on the evening of July 4, when he found it lying on the ground while watching fireworks at John's Pond in Mashpee. Later that night, at 10 or 11 P.M. , the defendant returned to his mother's house on Maple Street in Taunton, where he spent the night.[4] The defendant stated that he came into possession of the work proposals in Taunton, when he pulled them from a duffel bag he found and discarded on the side of the road. On July 8, the defendant returned to Mashpee via a bus that dropped him off at John's Pond Plaza.[5] When asked on July 22 why he had not returned the items to their owner, Casey, the defendant replied that he had intended to do so.
On July 28, the defendant sent a handwritten letter from the Barnstable County house of correction addressed to Brian Casey, Krista Finn,[6] and a third employee at Casey Landscaping's business address. In the letter, the defendant wrote that he would "like to know WTF it is that is trying to point their finger At me for stealing the [D]enali bcuz I kno it aint Brian.... I will be out of here some point soon once somebody answers my phone calls & comes to bail me out for $540 cash which I can pay back too." The defendant further explained his intentions following his release from the house of correction:
"Once I'm out I'm coming there asking Questions like a real Boss would. I am a human lie detector .... So everybody should be trying to help me vs go against me .... So somebody needs to write me back b4 I get out bcuz This nigga here will be on a real mission ...."
He ended the letter by warning the recipients that he did not "take any shit from any[one] and this Beast Is coming back to town & only friends won't be in my path. Regardless, I'll see y'all by the end of August & I've already put on about 15-20 lbs."
Sufficiency of the evidence. The defendant did not move for a required finding of not guilty under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), so we consider whether the submission of the case to the fact finder, on what the defendant now argues was insufficient evidence, created a substantial risk of a miscarriage of justice. See Commonwealth v. McGovern, 397 Mass. 863, 867-868 (1986) ("[F]indings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice" and will be reviewed even where issue not raised below). We therefore review the sufficiency of the evidence under Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), assessing whether the evidence, viewed in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, would have allowed a rational trier of fact to find all elements of the crimes proved beyond a reasonable doubt.
1. Witness intimidation. The defendant concedes that he wrote the letter to Casey Landscaping, "handwritten in an imposing style" that included phrases of a heightened "tenor." The defendant asserts, however, that the evidence was insufficient because (1) none of the phrases in the letter was explicitly or implicitly threatening; (2) nowhere in the letter did he "explicitly or impliedly direct any person to desist from participating in the investigation"; and (3) to the extent that any statements in the letter were directed to the three named recipients, they merely reflected the defendant's desire to determine who implicated him in the theft of the truck.
A fact finder could reasonably read the defendant's letter as threatening the three recipients. The witness intimidation statute, G. L. c. 268, § 13B, as amended by St. 2010, c. 256, § 120, provides, insofar as relevant here:
"Whoever, directly or indirectly, willfully ... threatens, ... intimidates or harasses another person who is ... a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type ... with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby ... shall be punished ...."
To obtain a conviction of witness intimidation, the Commonwealth must prove beyond a reasonable doubt that the defendant "wilfully engaged in intimidating conduct, that is, acts or words that would instill fear in a reasonable person, and did so with the intent to impede or influence a potential witness's testimony."[7] Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010).
"[W]ords do not need to be expressly intimidating, threatening, or harassing in order to fall within the meaning of intimidation.... The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered[;] ... the [fact finder] may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances."
Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 845-846 (2016) (quotation omitted).
Viewed in the light most favorable to the Commonwealth, there was sufficient evidence, in the form of the letter itself and the testimony of both Casey and Finn, to prove beyond a reasonable doubt the witness intimidation charges. Casey testified that the defendant was upset and angry over being let go from his job at Casey Landscaping in June, just one to two months before he sent the letter, which Casey described as "sort of ... threatening." Finn testified that the letter threatened and frightened her. Further, the letter explicitly stated the defendant's intention to come to Casey Landscaping after his release and his warning to the recipients not to be his enemy.[8]
A rational trier of fact could have read the letter as expressing the defendant's belief that one or more of the recipients "point[ed] the[ ] finger" at him, leading to his arrest and incarceration awaiting trial. Although the letter stated, "I kno[w] it ain[']t Brian," the trier of fact could rationally infer that the defendant knew that Brian Casey, as the owner of the truck and of the stolen property recovered from the defendant, would likely be a witness at trial, and the defendant intended to intimidate Casey, like the other recipients, into not giving any adverse testimony. The repeated reference to all three recipients by name and by use of the term "y'all" throughout the letter supports this inference, as does, in the case of two of the victims, the demand for "responses from both Brian C. and [K]rista[,] ASAFP!" Nothing required the trier of fact to view the letter in the manner the defendant suggests.
2. Receiving stolen property. Under G. L. c. 266, § 60, in order to obtain a conviction of receiving stolen property, the Commonwealth must prove that (1) the defendant bought, received, or aided in the concealment of property that had been stolen or embezzled, (2) "knowing it to have been stolen." Commonwealth v. Yourawski, 384 Mass. 386, 387 (1981). It suffices that the defendant "either knew or believed [the] property was stolen property at the time it came into his possession, or at any time while it was in his possession he ascertained that it was stolen property and he undertook to deprive the owner of his rightful use of it." Commonwealth v. Kirkpatrick, 26 Mass. App. Ct. 595, 599 (1988) (quotation omitted). To prove concealment, "[i]t is enough that the defendant[ ] acted purposefully to withhold the property from its rightful owner or to make it more difficult for the owner to discover it." Commonwealth v. Ciesla, 380 Mass. 346, 349 (1980). The defendant contends that there was insufficient evidence to prove that he knew the proposals and stamp were stolen.[9]
Although actual knowledge that property is stolen is required, the Commonwealth may prove such knowledge through circumstantial evidence. Commonwealth v. Cromwell, 53 Mass. App. Ct. 662, 668 (2002). See Commonwealth v. Donahue, 369 Mass. 943, 949, cert. denied, 429 U.S. 833 (1976). "In assessing such circumstantial evidence, if the defendant's possession of property exhibits 'peculiarities' and 'occur[s] in a context fraught with suspicion,' a [fact finder] may draw inferences that the possession was not lawful, and that the defendant had received and was holding, and knew he was holding, stolen goods." Cromwell, 53 Mass. App. Ct. at 668, quoting from Kirkpatrick, 26 Mass. App. Ct. at 596, 602. In a receipt of stolen property case, "[t]he inference permitted by possession of recently stolen property can be a strong one. It may act as a substitute for direct proof of guilty knowledge." Kirkpatrick, 26 Mass. App. Ct. at 600 (discussing permissible inference that defendant, found in possession of recently stolen property, knew that property was stolen).
Taking the evidence in the light most favorable to the Commonwealth, the trier of fact reasonably could infer that the defendant knew the objects were stolen and withheld them from their rightful owner, Casey. First, the items were found on the defendant's person approximately eight days following their theft from Casey's truck. Additionally, evidence that the defendant was a former Casey Landscaping employee supported the inference that he knew the objects belonged to Casey and that Casey would likely have wanted them back. Furthermore, Casey testified that the defendant was angry over his firing from Casey Landscaping one to two months prior. Only after his arrest, during an interview with the police, did the defendant state his intention to return the objects to Casey. The trier of fact was not required to credit this statement.
Furthermore, the trier of fact was entitled to infer the defendant's knowledge that the objects were stolen because his possession of the property "exhibit [ed] peculiarities and occur[ed] in a context fraught with suspicion." Cromwell, 53 Mass. App. Ct. at 668 (quotation omitted). These circumstances included (1) the defendant's claim that he happened to find one of Casey's items on the ground in Mashpee, and, a short time later, another of Casey's items in a duffel bag on the side of the road in Taunton, some miles away; (2) the defendant's presence at his mother's Taunton home on the same night as, and a short distance away from where, Casey's truck (where Casey had left the items) was found burning; (3) the defendant's "fidgety, antsy" manner prior to his arrest while in possession of the backpack containing the items; and (4) the "disconnect" between the defendant's statement that he intended to return the items to Casey and his failure to do so on July 8, when a bus dropped him off in Mashpee at John's Plaza, one-eighth of a mile from Casey Landscaping, or at any time before his arrest several days later. Based on the totality of the evidence, the trier of fact could infer the defendant's knowledge that the items were stolen.
Conclusion. The evidence was sufficient to support the convictions of witness intimidation and receiving stolen property.
Judgments affirmed.

The defendant was also convicted of unlawful possession of ammunition without an FID card (G. L. c. 269, § 10 [h ] [1] ). The arguments the defendant makes on appeal do not address that conviction.

The defendant was also found in possession of a shotgun shell. See note 1, supra.

A Taunton firefighter testified at trial that the supermarket where the burning truck was found was located one block from Maple Street.

John's Pond and John's Pond Plaza are both located approximately one-eighth of a mile from Casey's Landscaping.

Although the letter was addressed to "Crista," the trier of fact could reasonably infer that it was intended for Krista Finn, who testified that she was the office manager at Casey's Landscaping, knew the defendant from his employment there, understood the letter to be addressed in part to her, and felt "scared" and "threatened" by it.

Both the defendant and the Commonwealth cite to cases setting forth the elements to be proved under the version of G. L. c. 268, § 13B, in effect until early 2006. The statute has been amended three times since then, including substantial revisions in 2006 and two additional revisions in 2010. Hrycenko v. Commonwealth, 459 Mass. 503, 507-508 & n.6 (2011). See Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 532-533 (2010). "The means of intimidation, the class of victims, and the kinds of criminal proceedings covered by the statute were all enlarged.... The over-all purpose and effect of the amendment was therefore to expand the scope of the statute to address heightened concerns with witness intimidation ...." Id. at 534. See Hrycenko, 459 Mass. at 507-508.

A rational trier of fact could also find that the defendant's reference to bail was not a plea or request that the recipients post his bail, but instead part of his attempt to instill fear that he would soon be released and would return to Casey Landscaping to confront the recipients.

The defendant also argues, and the Commonwealth's brief agrees, that it must further be proved that he intended to permanently deprive the owner of the objects. But none of the cases cited for this proposition suggests that this is an element of the crime of receiving stolen property, as opposed to an element of larceny.