## Commonwealth *vs.* Leslie E. Lee.

No. 95-P-1501.

Plymouth. April 15, 1997. - July 16, 1997.

Present: Warner, C.J., Smith, & Laurence, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury. *Joint Enterprise. Evidence,* Consciousness of guilt.

At the trial of an indictment for voluntary manslaughter, the evidence was sufficient to support the defendant's conviction on both a theory of joint venture [166-168] and a theory of individual liability [168-169], and the judge correctly denied the defendant's motion for a required finding of not guilty, made at the close of the Commonwealth's case and at the close of all the evidence.

At the trial of an indictment for voluntary manslaughter, there was no error in the judge's instruction to the jury on consciousness of guilt. [169-171]

Indictment found and returned in the Superior Court Department on June 3, 1991.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

*Bruce Ferg,* Committee for Public Counsel Services, for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Commonwealth.

Warner, C.J. The defendant was convicted by a Superior Court jury of voluntary manslaughter (G. L. c. 265, § 13). On appeal, he challenges the trial judge's denial of his motion for a required finding of not guilty and argues that the instruction on consciousness of guilt was erroneous. We affirm.

1. *Motion for a required finding of not guilty.* The defendant first challenges the judge's denial of his motion for a required finding of not guilty made at the close of the Commonwealth's case and again at the close of the evidence. He maintains that the judge's refusal to grant the motion was error because the evidence was insufficient to support a conviction of voluntary

manslaughter on either a theory of joint venture or individual liability. We think the evidence was sufficient to withstand the defendant's motion on either theory.

Considered in the light most favorable to the Commonwealth, the jury could have found the following facts beyond a reasonable doubt. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). On April 25, 1991, the body of Ronald McGovern was unearthed from a shallow grave on property owned by his parents. An autopsy revealed that McGovern died from a combination of multiple blunt force injuries to the face and head and asphyxia.[1] Prior to his death, McGovern lived in a house located on the property; the defendant had been staying in a trailer next to the house.

On the evening of April 23, 1991, several men, including the defendant and his nephew, Steven Lee, gathered at the McGovern property. They played cards and consumed large quantities of beer and whiskey late into the night. The next morning, several of the men congregated at a picnic table outside the house and resumed drinking. McGovern came outside and voiced his suspicions that one of the men was seeing his girlfriend. For some unknown reason, he subsequently poured gasoline around the defendant's trailer and went inside to ask for a match. The defendant and Steven Lee came out of the trailer and argued bitterly with McGovern. Steven Lee "body slammed" McGovern and, with the defendant's help, "escorted" him into the house. The men seated outside could hear yelling coming from the house.

When McGovern emerged, he was limping noticeably. He said that he was headed for the hospital, and set off down a dirt road that led away from the property. The defendant and Steven Lee came outside and inquired as to McGovern's whereabouts. They subsequently followed him down the road, quickly caught up to him, and took hold of his arms. McGovern managed to extricate himself from the men's grasp and continued walking down the road. Both Lees followed. Fifteen to twenty minutes later, the defendant emerged from the woods, retrieved two shovels from the house, and returned to the woods. Later, he and Steven Lee were seen making "digging motions" in the woods.

The defendant returned to the house again, still carrying the shovels, and washed them under running water. Shortly thereaf-

---

[1]A portion of a leaf was found lodged in the airway of McGovern's throat, which would have interfered with his ability to breathe.

ter, Steven Lee came out of the woods and told Richard Oberton, one of the men gathered outside the house, that he had "done [McGovern] in." He further commented that McGovern "died hard." Steven Lee then turned to the defendant and said, "I ain't doing this all by myself." Later, the defendant told his roommate, Richard Laughlin, that "Steven had done [McGovern] in," and the defendant watched as Steven Lee burned a pair of blue jeans in an incinerator.

On April 25, Laughlin reported the events of the previous day to police. When officers arrived at the McGovern property, the defendant hid inside a closet and asked Laughlin not to reveal his presence. He subsequently went to Oberton's house and stayed there until the next day, when he was observed by police staggering down the street and was placed in protective custody. When questioned, the defendant told police three different stories. Initially, he stated that he had not seen McGovern on the day of the killing. He subsequently admitted seeing McGovern and Steven Lee "slap boxing," and stated that by the time he caught up to Lee and McGovern in the woods, McGovern appeared to be dead. Finally, the defendant conceded that he had seen part of the fight between Steven Lee and McGovern and admitted helping Steven Lee bury McGovern's body with shovels taken from the house.

At trial, Steven Lee testified that he was presently serving a sentence for manslaughter. He claimed not to remember many of the events surrounding the killing. He admitted beating McGovern, however, but denied striking him with a shovel. The defendant also testified. He stated that he never struck McGovern and denied any part in the killing. He did admit helping Steven Lee bury the body.

Although the prosecution's theory throughout trial appeared to be joint venture, the judge instructed the jury on this theory and also on individual liability. Moreover, the verdict slip did not specify whether the defendant's conviction was premised on individual liability or joint venture. Thus, in order to be sustained, the defendant's conviction must have support in the evidence sufficient to prove both theories. *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995).

a. *Joint venture.* Voluntary manslaughter is defined as "a killing from a sudden transport of passion or heat of blood, upon

a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 (1989). In order to sustain a conviction for voluntary manslaughter based upon a theory of joint venture, the Commonwealth must prove (1) that the defendant was present, (2) with knowledge that another intended to commit the crime or with intent to commit the crime, and (3) by agreement was willing and available to help if necessary. *Commonwealth* v. *Mahoney*, 406 Mass. 843, 846 (1990).

The defendant argues that the evidence was insufficient to establish that he was present when Steven Lee killed McGovern or that he shared Lee's intent to kill. We disagree.

The jury could have found beyond a reasonable doubt that the defendant was angry with McGovern as a result of his attempt to burn the trailer, and that he observed Steven Lee physically assault McGovern, helped Lee "escort" McGovern into his house and either witnessed or participated in the beating that ensued. He subsequently pursued McGovern down the dirt road, knowing that he was injured, and attempted physically to detain him. Next, he watched Steven Lee beat McGovern into unconsciousness, returned to the house to procure two shovels and helped Lee bury McGovern's body. There was evidence, discussed more fully, *infra*, indicating that the defendant used one of the shovels to inflict injuries that contributed to McGovern's death. The defendant also destroyed evidence and failed to report the incident to police, instead doing his best to avoid being apprehended. Finally, when questioned, he gave three contradictory versions of events.

This is not a case where the actions of Steven Lee "appear[] to have been the [actions] of one alone moved by motives to which [the defendant] was not a party." *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973). Rather, the evidence established that both men argued with McGovern, "escorted" him into the house and pursued him down the dirt road, were present when he was killed, and participated in the subsequent attempt to cover up the crime. Under these circumstances, the jury could reasonably have inferred not only that the defendant was present when McGovern was killed but also that he shared Steven Lee's intent to kill. See *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444

U.S. 881 (1979) (requisite mental state may be inferred from the defendant's knowledge of the circumstances and subsequent participation in the crime).[2]

b. *Individual liability.* At trial, two shovels recovered from the McGovern property were introduced in evidence. The prosecution maintained that these were the shovels carried into the woods by the defendant and that the larger of the two was used not only to bury McGovern's body but to inflict massive head injuries that contributed to his death. On appeal, the Commonwealth argues that the further inference that the defendant struck McGovern with the shovel is also reasonable.

The defendant maintains that the more plausible explanation of the events surrounding McGovern's death is that Steven Lee struck the fatal blows with either his fists or his shod foot and argues, therefore, that the evidence was insufficient to support a guilty verdict on a theory of individual liability. Whether the version of events now advanced by the defendant may represent a possible interpretation of the evidence adduced at trial, however, is irrelevant. Indeed, the fact that the evidence might not have required the jury to draw an inference of guilt against the defendant does not necessitate a conclusion that his motion for a required finding of not guilty should have been allowed. *Commonwealth* v. *Latimore*, 378 Mass. at 678-679. Rather, the relevant question is whether the evidence permitted an inference that the defendant struck McGovern with one of the shovels and that the resulting injuries contributed to his death. *Ibid.* We conclude that it did.

James Weiner, the Commonwealth's forensic pathologist, testified that McGovern was still alive when he sustained massive, blunt force injuries to his face and head and that these injuries combined with asphyxia to cause death. Weiner further stated that, while some of McGovern's injuries could have been caused by a fist, the uniform broad band of bruising across his eyes, face, and jaw was consistent with having been caused by a flat, broad object, such as the blade of the larger shovel recovered from McGovern's property. The blade contained hair and a "mucus-like red smear" that was consistent with McGovern's blood.

---

[2]The fact that much of the Commonwealth's case was circumstantial does not, as the defendant suggests, alter our analysis. It is well established that "[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt." *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989).

From this evidence, the jury could reasonably have inferred that the massive injuries to McGovern's face and head were inflicted by an individual wielding the large, flat-bladed shovel and that these injuries contributed to McGovern's death.

The evidence also supports an inference that the individual wielding the shovel was the defendant. Tests performed on the handle of the large shovel were negative for the presence of blood, indicating that whoever used it did not have significant amounts of blood on his hands. When the defendant was arrested, no blood was observed on his hands. Subsequent tests revealed only trace amounts of blood under four of his fingernails. By contrast, Steven Lee, the only other individual in the woods that morning, testified that he was covered with blood as a result of having beaten McGovern.[3] Thus, the jury could have inferred that the defendant struck McGovern with the blade of the large shovel and subsequently used it to bury his body, and that Steven Lee used the smaller shovel to dig McGovern's grave. Such an inference is further supported by the fact that tests conducted on the handle of the smaller shovel were positive for the presence of blood.

With respect to the charge of voluntary manslaughter on a theory of individual liability, we hold that the evidence was sufficient to "bring minds of ordinary intelligence and sagacity to the persuasion of [the defendant's guilt] beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. at 676. Accordingly, the defendant's motion for a required finding of not guilty was properly denied.

2. *Consciousness of guilt instruction.* We next consider the judge's instruction on consciousness of guilt. The judge gave the following instruction.

> "[T]here was some evidence introduced here that . . . [the defendant] hid or didn't make himself known to the police . . . and that he made . . . or failed to make certain statements from which the jury may . . . infer a consciousness of guilt. . . . What [this] means simply is that there's an implied admission by certain acts or conduct. Any

---

[3]The webbing between Steven Lee's fingers was noticeably stained with blood when he was arrested, and tests performed on his hands and arms were positive for the presence of occult blood.

conduct of a party inconsistent with the belief in the righteousness of his cause is admissible as an admission that his cause is weak. . . .

"You are not required . . . to imply any consciousness of guilt from the defendant's acts; it is only open to you to do so. . . .

"In 1982, . . . the Supreme Judicial Court said there are two assumptions that underlie the inference of guilt that may be drawn from evidence of flight, concealment or similar acts. The first . . . is that a person who flees or hides . . . does so because he feels guilt concerning that act. The second is that one who feels guilt concerning an act has committed that act. The first assumption has been questioned by a number of courts which have observed that a person's flight, concealment, or other avoidance of arrest may often be prompted by something other than feelings of guilt. The second assumption has also been criticized in that feelings of guilt may be present without actual guilt in neurotic, as well as so-called normal people.

"[Y]ou are not to convict the defendant on the basis of flight or concealment alone, or consciousness of guilt, but you may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant."

At the close of the charge, defense counsel objected and requested that the judge give an instruction pursuant to *Commonwealth* v. *Toney*, 385 Mass. 575, 584 n.3 (1982). The judge declined to modify the instruction. The defendant now maintains that the instruction was overbroad because it improperly invited the jury to consider the defendant's belief that his own case was weak in determining guilt. He further argues that the instruction failed to inform the jury that an innocent person may also experience guilt. We discern no error.

Although the judge did not use the precise language requested by the defendant, the instruction was essentially the same as that set out in *Toney*. 385 Mass. at 584-585 & n.3. Not only did the charge explain the possible reasons for drawing an inference of guilt from the defendant's actions, it "adequately cautioned the jury concerning the equivocal nature of [consciousness of guilt

evidence and explained that] feelings of guilt are sometimes present in innocent people." *Id.* at 585 & n.6. Moreover, the instruction emphasized that the jury might, but need not, consider such evidence as indicative of guilt and admonished them that consciousness of guilt evidence alone is insufficient to sustain a conviction. Contrast *Commonwealth* v. *Matos*, 394 Mass. 563, 566 (1985). Nothing more was required. See *Commonwealth* v. *Roberts*, 378 Mass. 116, 130 (1979) (as long as instructions are "adequate and clear . . . on the applicable law, the phraseology, method and extent of the charge are matters within [the judge's] discretion").

*Judgment affirmed.*