## Commonwealth *vs.* William Hunt.

No. 98-P-1068.

Norfolk. December 16, 1999. - December 12, 2000.

Present: Armstrong, C.J., Smith, & Brown, JJ.

*Evidence,* Admissions and confessions, Consciousness of guilt. *Constitutional Law,* Admissions and confessions, Assistance of counsel. *Practice, Criminal,* Assistance of counsel.

A criminal defendant waived appellate review of a Miranda issue where it was not raised by a pretrial motion or an objection at trial [566-567]; further, trial counsel's forgoing a Miranda-based challenge was a reasonable defense strategy [567].

At a criminal trial, evidence of what the defendant said to a police officer in response to a question was properly admitted and properly commented on by the prosecution; further, the failure of defense counsel to have objected was not ineffective assistance of counsel, as objecting would have been futile. [567-568]

Evidence at the trial of a complaint for receiving a stolen motor vehicle was sufficient to establish, by significant circumstantial evidence, the inference that the defendant knew the vehicle in his possession was stolen. [568-571]

Complaint received and sworn to in the Dedham Division of the District Court Department on January 15, 1998.

The case was tried before *R. Peter Anderson,* J.

*Matthew V. Soares* for the defendant.

*Brian A. Wilson,* Assistant District Attorney (*Thomas L. Finigan,* Assistant District Attorney, with him) for the Commonwealth.

Armstrong, C.J. A jury convicted the defendant of receiving a stolen motor vehicle in violation of G. L. c. 266, § 28(*a*). On appeal he challenges the sufficiency of the evidence, the use at trial of statements he made to police both before and after his arrest, and the performance of his trial counsel.

All the evidence, which we recount in the light most favorable to the Commonwealth, came in during the Commonwealth's

case, as the defendant declined to testify or call witnesses of his own. While driving through the rear lot of the Westwood Motor Lodge, a lone police patrolman observed an unattended Toyota automobile that had been parked oddly — "backed in," against common practice, and at a "tough angle." There were items on the hood, including toilet paper, towels, newspapers, and, of more value, a cellular phone and charger. As the officer neared, he saw the defendant approaching the car carrying a gym bag and other items. On glimpsing the policeman and marked cruiser, the defendant abruptly shifted direction and veered from the Toyota. The officer called out, "Is this your car?" The defendant responded that it was not.

On request the defendant produced identification, and using his police radio, the officer learned of an existing warrant for the defendant's arrest on an unrelated matter. He apprehended the defendant and searched him, finding in his pocket a single key labeled "Toyota." The patrolman again asked whether the Toyota belonged to him, and he "denied any knowledge of ownership."

Neither the condition nor the appearance of the vehicle was such as might alert a possessor or observer to its stolen character; but on radioing in the license plate number and the vehicle identification number, the patrolman was informed by police dispatch that the Toyota was stolen. (It had been stolen from a used car lot in Malden). A third inquiry as to whether the car belonged to the defendant produced another "deni[al of] any knowledge of it." The officer then tested the key in the Toyota, finding that it fit the ignition, trunk, and passenger door. He confronted the defendant by saying, "It's a stolen car. It's not yours." The defendant "denied it" and stated that the car belonged to another man, also named "William," who was staying with him in his motel room. He could not provide a last name for "William," and when a backup officer arrived about fifteen minutes later and searched the defendant's room, it was vacant and devoid of personal effects. The officers saw no one else in the area except motel employees. The evidence suggested that the only feasible routes of egress from the motel would have taken "William" past the arresting officer.

1. *Postarrest statements.* The defendant contends that the statements he made after his arrest should have been excluded because Miranda warnings were not first administered to him. See *Commonwealth* v. *Conkey*, 430 Mass. 139, 144 (1999). The

record does not disclose whether the warnings were given. The deficiency cannot be held against the Commonwealth because the defendant never raised the Miranda issue through a pretrial motion or an objection at trial. See *Commonwealth* v. *Smith,* 2 Mass. App. Ct. 821, 822 (1974) ("while the Commonwealth bears the burden of proving adherence to the *Miranda* rules, it is not required to make that showing unless the defendant challenges compliance with those rules"); *Commonwealth* v. *Mott,* 5 Mass. App. Ct. 811, 811 (1977); *Commonwealth* v. *Ruggerio,* 32 Mass. App. Ct. 964, 965-966 (1992). See also *Commonwealth* v. *Festa,* 369 Mass. 419, 426 (1976); *Commonwealth* v. *Barnes,* 399 Mass. 385, 393-394 (1987).

The defendant argues that his trial counsel gave ineffective assistance in not mounting a Miranda-based defense to the admission' of the statements. Even if we could assume that Miranda warnings were not given, there was obvious tactical benefit to the defense in forgoing a Miranda-based challenge, for it enabled the jury to hear an innocent explanation for the defendant's apparently exclusive possession of a stolen automobile. The defense thus focused on "William": in cross-examination of police witnesses and in closing argument, counsel endeavored to show that the search for "William" was perfunctory and that there was ample time and opportunity for him to evade detection. Allowing the claim about "William" to come in through police testimony facilitated this defense without having the defendant testify and expose himself to cross-examination. Although unsuccessful, this approach was not manifestly unreasonable and was not ineffective assistance of counsel. See *Commonwealth* v. *Conley,* 43 Mass. App. Ct. 385, 391-392 (1997); *Commonwealth* v. *McCormick,* 48 Mass. App. Ct. 106, 108 (1999).

2. *Prearrest "silence."* Part of the defense's cross-examination of the arresting officer sought to show that when the defendant denied owning the Toyota, he was being truthful rather than evasive because he had in fact borrowed it from "William." Countering, the prosecutor's redirect emphasized that the defendant, when first asked if the car was his, responded by denying ownership rather than mentioning "William." Although there was no objection to this testimony, the defendant now argues that it should have been excluded as impermissibly exploring his prearrest silence in violation of his right to due process and privilege against self-incrimination. See generally *Commonwealth* v. *Nickerson,* 386 Mass. 54 (1982).

We disagree with the defendant's characterization of the issue as involving "silence." His theory evidently is that his choice not to mention "William" in replying to the officer should be treated as an exercise of his right to remain silent. That reasoning is flawed because the defendant did not remain silent when questioned; instead he chose to speak. The Commonwealth could use what he said against him and point out his omissions to show the inherent weakness of his case. See *Commonwealth v. Belton,* 352 Mass. 263, 270, cert. denied, 389 U.S. 872 (1967); *Commonwealth* v. *Martino,* 412 Mass. 267, 283 (1992); *Commonwealth* v. *Porter,* 15 Mass. App. Ct. 331, 335-336 (1983); *Commonwealth* v. *Modica,* 24 Mass. App. Ct. 334, 342 (1987); *Commonwealth* v. *Azar,* 32 Mass. App. Ct. 290, 303 (1992); *Commonwealth* v. *McClary,* 33 Mass. App. Ct. 678, 685-686 (1992), cert. denied, 510 U.S. 975 (1993). Contrast *Commonwealth* v. *Nickerson,* 386 Mass. at 55 (silence where defendant did not report crime to police); *Commonwealth* v. *Thompson,* 431 Mass. 108, 116, cert. denied, 121 S. Ct. 157 (2000) (defendant made no response and stared at floor when police told him of wife's death). Although the defendant's pre-arrest statements that he was not the owner of the car were literally true, the jury could view them in context as a denial of any connection to the Toyota, a contention belied by the defendant's possession of the key and by his story about "William." "Statements may be properly admitted as evidence of consciousness of guilt where there is other evidence tending to prove the falsity of the statements. See *Commonwealth* v. *Robles,* 423 Mass. 62, 71 (1996); *Commonwealth* v. *Merola,* 405 Mass. 529, 547 (1989)." *Commonwealth* v. *Blake,* 428 Mass. 57, 60 n.5 (1998). The failure of counsel to object was not ineffective assistance, as that course would have been futile. See *Commonwealth* v. *Cohen,* 412 Mass. 375, 392 (1992).[1]

3. *Sufficiency.* Lastly, the defendant challenges the denial of his motions for a required finding of not guilty, arguing the paucity of evidence that he knew or believed the Toyota was stolen. See, e.g., *Commonwealth* v. *Woody,* 429 Mass. 95, 99-100 (1999). In our view, the Commonwealth's proof of this ele-

---

[1]The defendant's related argument that the statements should have been excluded as more prejudicial than probative, even if it had been raised at the trial, would have lain in the judge's discretion. See *Commonwealth* v. *LaSota,* 29 Mass. App. Ct. 15, 24 (1990); *Commonwealth* v. *Martin,* 47 Mass. App. Ct. 240, 246 (1999).

ment of the offense was sufficient under *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

The defendant's possession of the stolen vehicle, standing alone, cannot support an inference beyond a reasonable doubt that he knew or believed the vehicle was stolen.[2] See *Commonwealth* v. *Dellamano*, 393 Mass. 132, 137-139 (1984); 76 C.J.S. Receiving Stolen Goods §§ 26, 29(b) (1994). The Commonwealth presented in addition, however, significant circumstantial evidence: the parking of the Toyota (by the defendant, it may be inferred) in the motel's back lot with the sole license plate facing the building (i.e., concealment, see *Commonwealth* v. *Meehan*, 33 Mass. App. Ct. 262, 265 [1992])[3]; the defendant's shift of direction away from the car on seeing the officer (i.e., avoidance of police, see *Commonwealth* v. *Williams*, 378 Mass. 217, 229-230 [1979]); and his initial denials of connection to the vehicle followed by the discovery of the key on his person and his concoction, when confronted with the officer's knowledge that the vehicle was stolen, of an alleged owner who was nowhere to be found (i.e., falsehoods, see *Commonwealth* v. *Fancy*, 349 Mass. 196, 201 [1965]; *Commonwealth* v. *Robles*, 423 Mass. at 70-71 & n.12). The knowledge element of the crime of receiving may be proven circumstantially, see *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 648, 651-652 (1977), and similar evidence has been considered sufficient in the context of proof of constructive possession in drug trafficking

---

[2]Of course, when a defendant possesses property "recently" stolen, that possession alone is a sufficient basis for the jury to infer that he knows it to be stolen. See *Commonwealth* v. *Burns*, 388 Mass. 178, 183 (1983); *Commonwealth* v. *Kelly*, 1 Mass. App. Ct. 441, 449 (1973); *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 600 (1988). Here, however, no evidence showed how recently the Toyota had been stolen.

[3]The defendant argues that no negative implication arises from the car's location in the rear (as opposed to the front) lot because it was simply parked in the numbered spot assigned by the motel to the defendant's room. Although this is one inference, others are possible: for example, that the defendant chose that motel, or accepted that room, because of the rear lot parking, away from the main highway. The defendant also offers innocent reasons why the car might have been backed in contrary to the common practice. Despite these possibilities, the jury were free to consider the backing in as attempted concealment of the Toyota. "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996), quoting from *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977).

cases.[4] Decisions from other jurisdictions have similarly allowed juries to infer from comparable evidence a defendant's knowledge that property in his possession was stolen. See *Cogdell* v. *United States*, 307 F.2d 176, 179 (D.C. Cir. 1962), cert. denied, 371 U.S. 957 (1963); *United States* v. *Cowden*, 545 F.2d 257, 264 (1st Cir. 1976), cert. denied, 430 U.S. 909 (1977); *United States* v. *Jones*, 797 F.2d 184, 187 (4th Cir. 1986); *People* v. *Kefry*, 166 Cal. App. 2d 179, 188-190 (1958); *State* v. *Applewhite*, 682 S.W.2d 185, 188 (Mo. Ct. App. 1984); *State* v. *Stauff*, 126 N.H. 186, 190 (1985).

The defendant argues correctly that the outstanding warrant provided an alternative explanation for the defendant's initial retreat from the police officer, cf. *Commonwealth* v. *Fancy*, 349 Mass. at 201 & n.1; but the jury reasonably could view it as an unlikely motivation for postarrest statements about a stolen vehicle unconnected to the warrant. The jury could also consider improbable the explanation for those statements now proffered: a desire not to implicate "William" in the charge underlying the warrant, or in a charge of assisting the defendant as a fugitive, or in some other unspecified criminal activity. Even if the jury were to believe in the existence of "William," they could view a desire to protect him as unlikely to explain the defendant's pointed attempts to dissociate himself specifically from the automobile. This is not a case in which the evidence supported equally inferences of guilt and innocence, see *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 240-241 (1997). The jury were warranted in inferring the defendant's guilty knowledge.

Finally, as the defendant points out, the evidence apart from possession all carries the flavor of consciousness of guilt. See *Commonwealth* v. *Toney*, 385 Mass. 575, 584-585 & n.4 (1982). Obliquely, he invokes the oft-stated principle that a jury may

---

[4]Constructive possession requires knowledge of the presence of the contraband and the ability and intention to exercise dominion and control over it. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). Sufficient proof of knowledge has been found, for example, in a defendant's increased agitation or sudden gesture and speech as a police search of an area under the defendant's control came perilously near to the concealed drugs. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 651-652 (1990); *Alicea* v. *Commonwealth*, 410 Mass. 384, 387-388 (1991). See also *Commonwealth* v. *Sheline*, 391 Mass. 279, 285 (1984). In our view, the defendant's avoidance of the police officer, denials of ownership, and sudden disclosure about "William" are analogous to the behavior found sufficiently telling of the knowledge of the defendants in the drug cases.

not convict a defendant on the basis of consciousness of guilt evidence alone. See *Commonwealth* v. *Fancy*, 349 Mass. at 201; *Commonwealth* v. *Toney*, 385 Mass. at 585; *Commonwealth* v. *Merola*, 405 Mass. at 547; *Commonwealth* v. *Spina*, 1 Mass. App. Ct. 805-806 (1973); *Commonwealth* v. *Lee*, 43 Mass. App. Ct. 164, 171 (1997). That maxim was not violated here, where the consciousness of guilt evidence did not stand "alone" in a true sense but appeared with, and drew its probative force from, the evidence of possession of the stolen car. Comparison may be made to the cases of constructive possession of drugs mentioned above at note 4, *supra*.

*Judgment affirmed.*