The defendant was tried before a District Court jury on various charges including breaking and entering in the nighttime with intent to commit a felony, strangulation, larceny, and multiple violations of an abuse prevention order. He was convicted on a single count of violation of the abuse prevention order, on a single date. The defendant testified at trial, and he conceded being at the residence specified in the order on the date in question. He now appeals, claiming various errors by the prosecutor and trial judge. We affirm.
1. Background. We recount those facts the jury could reasonably have found, as they are relevant to the charge of violating the restraining order.
On June 23, 2015, Jane[2] obtained a G. L. c. 209A abuse prevention order against the defendant, who is her former boy friend and the father of one of her children. The restraining order was for one year, not expiring until June 23, 2016. The restraining order provided that the defendant was to stay fifty yards away from Jane, even if she "seems to allow or request contact." The defendant was also ordered to stay away from a specific address, which was Jane's residence. At trial, Jane testified that the defendant was in court when the restraining order issued on June 23, 2015, and the defendant testified that he was served with the restraining order and aware of its specific terms.[3]
The key events that were the subject of trial occurred in the evening of July 28, 2015.[4] Both Jane and the defendant testified, and both recounted that the defendant showed up that night at the address identified in the order, which was Jane's residence. Both also testified that they spoke at the residence that evening, and that Jane, at least, was upset. After Jane and the defendant spoke, Jane left the apartment and called 911. The police arrived shortly thereafter. The defendant saw the police from the apartment, and left down the apartment building's back staircase because, in his words, he "didn't want to get in trouble with the police." When he reached the bottom of the staircase he remained there, which is where the police found him, "sweating" and "out of breath." The defendant testified that he changed his mind and decided to remain on the grounds because he wanted to talk to the police-because, in his words, he had "done nothing wrong."[5]
Following a jury trial, the defendant was found guilty of one charge of violating an abuse prevention order, in violation of G. L. c. 209A, § 7, for the date of July 28, 2015. This appeal followed.
2. Discussion. The defendant asserts three separate errors during trial, which he contends require reversal of his conviction. At the outset, however, we note that the elements of the crime of violating the restraining order were essentially conceded; the defendant took the stand and testified that he had notice of the order and its terms, and that he was inside the residence identified in the order and spoke directly to Jane on the night in question. Those facts satisfy the essential elements of the crime. See Commonwealth v. Rauseo, 50 Mass. App. Ct. 699, 704-705 (2001).
The defendant first argues that one of the prosecutor's questions on cross-examination to the defendant-"So rather than speak with officers and explain to them what had happened, you decided to go down the back of the building with [Jane's] purse and wait there until they came to you?"-infringed upon his right not to incriminate himself. The question was proper; it was not a comment on a decision by the defendant to remain silent, but rather was appropriate cross-examination in direct response to the defendant's own testimony that because he believed he had done nothing wrong, he had made the deliberate decision to talk to the police. See Commonwealth v. Hunt, 50 Mass. App. Ct. 565, 567-568 (2000). Furthermore, even if we were to assume that the question was improper, given the evidence of guilt, the jury's verdicts on the other charges, and the judge's instructions, there was no "substantial risk of a miscarriage of justice" here. Commonwealth v. Letkowski, 469 Mass. 603, 617 (2014).
Nor was there any abuse of discretion in the judge's decision to give a consciousness of guilt instruction based upon the defendant's flight down the back stairs. See Commonwealth v. Morris, 465 Mass. 733, 737-739 (2013). There was abundant evidence to justify the instruction; the defendant fled the apartment, and he testified that he did so to avoid the police.
Finally, the defendant complains about a sentence in the prosecutor's closing argument where, in responding to the defense's assertions that Jane had fabricated her version of the events that evening, the prosecutor attempted to bolster Jane's credibility by pointing out that she came "in here and testif[ied] under the pains and penalties of perjury."
Arguing that an alleged victim should be viewed as credible because she was willing to testify was improper under Commonwealth v. Beaudry, 445 Mass. 577, 587-588 (2005). There was no objection at the time, however, and there is no substantial risk of a miscarriage of justice here. The evidence of the restraining order violation was not dependent on Jane's testimony. Moreover, the improper statement was one sentence of a lengthy paragraph of argument that was otherwise proper, where the prosecutor argued that Jane's actions in seeking and enforcing the restraining order against the defendant were consistent over an extended period of time. The otherwise proper context may well be why the sentence did not draw an objection in the first place. See Commonwealth v. Degro, 432 Mass. 319, 326 (2000).
Judgment affirmed.

A pseudonym.

Though both Jane and the defendant testified to an understanding that the restraining order permitted the defendant to have contact with Jane about her children, the order as it issued on June 23, 2015, did not so state.

The c. 209A order was in effect on July 28, 2015.

The defendant's trial contention was that Jane had concocted the entire situation as revenge because of the defendant's infidelity. The defendant testified he received a text message from Jane, earlier in the evening of July 28, 2015, to the effect that their infant daughter had fallen and hurt her head. He also told the police about the text. The defendant testified that he had gone to the apartment to check on his daughter.