NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-784

COMMONWEALTH

vs.

DEREK LIMA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Derek Lima, was charged with one count of receiving stolen property in violation of G. L. c. 266, § 60. After the close of evidence in his jury trial, the defendant moved for a required finding of not guilty, which the trial judge denied. The jury then returned a verdict of guilty. The defendant now appeals from his conviction, arguing that the trial judge erred in denying his motion for a required finding of not guilty, as the evidence was not sufficient to prove beyond a reasonable doubt that he had the requisite knowledge that the property was stolen. We affirm.

Background. Because the defendant challenges the sufficiency of the evidence, we summarize the facts of this case in the light most favorable to the Commonwealth. See Commonwealth v. Martin, 447 Mass. 274, 287 (2006).

On November 12, 2015, the residence of Matthew Cross was broken into and several items were stolen. Among the stolen items were five electric guitars, jewelry, and electronics. One of the stolen guitars was a 1979 Gibson Les Paul (Les Paul) that was missing its pick guard and had other unique markings. The Les Paul had an estimated value of approximately $2,000. After the items were stolen, the police created a flyer with descriptions of the stolen guitars and photographs of those guitar models, which were distributed to pawn shops and music stores in the area.

A week later, on November 19, 2015, the defendant brought a 1979 Les Paul to a pawn shop called Ideal Jewelry and Loan (Ideal). The Les Paul was missing its pick guard. Ideal offered a fifty dollar loan for the pawn of the guitar, which the defendant accepted. Ideal created a customer data sheet for the defendant, which included a photograph of him, a scan of his identification, and his fingerprint. This customer data sheet was connected to the pawn ticket that was generated for the pawn of the 1979 Les Paul.

The defendant later[1] returned to Ideal seeking to sell the Les Paul he had previously pawned. Ideal offered the defendant

_____

[1] The owner of Ideal testified that the defendant returned on November 25, 2015 to sell the Les Paul. However, the detective who worked on the investigation testified that he did not receive a phone call from Ideal until December 1, 2015, and

2

$186 for the Les Paul in addition to the previous fifty dollar loan.  The owner of Ideal testified at trial that he estimated that the Les Paul was worth at least $2,000.

On that occasion, the defendant also attempted to pawn or sell a second guitar.[2]  The owner of Ideal declined to accept the second guitar, as he recognized it from the flyer of stolen guitars he had been given by the police.  Having recognized that the Les Paul was also one of the guitars on the flyer, the owner of Ideal contacted the police after the defendant left the store on December 1, 2015.  Mr. Cross later identified the Les Paul that the police recovered from Ideal as the one that was stolen from his residence.

Discussion.  In analyzing whether there is sufficient evidence to support a conviction, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  We review the

---

that he was told that the guitar had been sold to Ideal that same day.  The confusion regarding the exact date on which the defendant returned to Ideal does not affect our decision.

[2] We note that the defendant is not charged with respect to this second guitar.  Therefore, we consider his possession and attempted pawn or sale of the second guitar only in the context of the conviction relating to the Les Paul.

denial of a motion for a required finding of not guilty de novo. Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013).

To convict a defendant of the crime of receiving stolen property, the Commonwealth must prove beyond a reasonable doubt that the defendant knew that the property was stolen. Commonwealth v. Dellamano, 393 Mass. 132, 137-138 (1984), citing Commonwealth v. Boris, 317 Mass. 309, 315 (1944).  Because it may not be possible to prove a defendant's knowledge by direct evidence, the Commonwealth may prove knowledge "by inference from all the facts and circumstances developed at the trial." Dellamano, supra at 136-137, quoting Commonwealth v. Holiday, 349 Mass. 126, 128 (1965).  As the jury were instructed without objection, the Commonwealth may prove the knowledge element by showing "that [the defendant] actually knew the property was stolen or at least that he believed that it was stolen."  See Commonwealth v. Hunt, 50 Mass. App. Ct. 565, 568-570 (2000).

The defendant argues that the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that he knew the Les Paul was stolen.  We disagree.  We find that all the facts and circumstances were sufficient to support an inference by a rational juror of the defendant's knowledge that the Les Paul was stolen.  See id.

First, the timing of the defendant's pawn of the Les Paul to Ideal tends to support an inference that the defendant knew

4

it was stolen.  The guitars were stolen from Cross's residence on November 12, 2015, and just one week later, on November 19, 2015, the defendant attempted to pawn the Les Paul that Cross later identified as one of his stolen guitars.  Our case law establishes that, if a jury finds that a defendant was in possession of recently stolen property, they are permitted to draw the inference that the defendant knew the property was stolen.  See Commonwealth v. Kirkpatrick, 26 Mass. App. Ct. 595, 600 (1988).  "The inference permitted by possession of recently stolen property can be a strong one."  Id.  While there is no bright-line rule defining what "recently" means in this context, given the evidence in this case, the passage of a mere one week between the theft and the pawn of the Les Paul was a fact the jury could have weighed in favor of the inference that the defendant knew that it was stolen.

Second, the defendant was in possession of not just one, but two of the stolen guitars, and he tried to sell or pawn the second after he successfully pawned the first.  On either November 25 or December 1, 2015, the defendant returned to Ideal with the second stolen guitar and attempted to pawn or sell it.  Although they were not required to, the jury could have reasonably inferred that the defendant pawned the Les Paul first to test the waters at this pawn shop and then, once that pawn was successful, returned to attempt to sell the two guitars

5

outright.  The second visit to Ideal and the possession and attempt to pawn or sell a second stolen guitar also support the inference that the defendant knew the Les Paul was stolen.

Finally, there was evidence at trial that the Les Paul was worth significantly more than the $236 the defendant accepted from Ideal for it.  Cross estimated, based on online searches, that the Les Paul was worth between $1,500 and $3,500 around the time of trial.  At the time of the theft, Cross had estimated that the Les Paul was worth approximately $2,500.  The owner of Ideal testified that he expected that the Les Paul would sell for a minimum of about $2,000.  The defendant argues that the pawn and sale of the Les Paul at a significant undervaluation was not evidence of the defendant's knowledge that it had been stolen because he did not request the fifty dollar pawn loan or the additional $186 for the sale.  Rather, he argues, Ideal offered him a certain amount of money and he accepted it, not knowing how much the Les Paul was actually worth.  The defendant relies on testimony that Ideal "like[s] to pay as little as possible because that means more profit for [them]."  Ideal's owner also testified that the employee who interacted with the defendant during both the pawn and the sale "was a very hard negotiator."  However, that testimony did not require the jury to draw the inference that the defendant did not know the Les Paul was stolen; the inference that the defendant accepted such

a low value rather than attempting to negotiate a higher price because he knew the Les Paul was stolen remained reasonable.

The defendant asserts that he did not behave in a manner consistent with knowledge that the Les Paul was stolen. For example, there was no evidence that the defendant altered the appearance of the Les Paul or attempted to remove the serial number before pawning it, tried to hide his identity during the pawning process providing identification and a fingerprint, or had a history of dealing in stolen merchandise.

Although the jury could have credited these facts, they were not required to. And while none of the facts we've described above standing alone may have been sufficient to prove the defendant's knowledge -- something we need not and do not decide -- all the facts and circumstances of this case, when viewed in the required light, are, taken together, sufficient to

support a conclusion beyond a reasonable doubt that the defendant knew that the Les Paul was stolen.

Judgment affirmed.

By the Court (Rubin,
Englander & D'Angelo, JJ.[3]),

Clerk

Entered:  June 27, 2024.

---

[3] The panelists are listed in order of seniority.